The State of Ohio, Appellee, v. Morris, Appellant.*

(No. 673—Decided February 15, 1954.)

Mr. *John L. McCrystal*, for appellee.
Mr. *Thomas Murray*, for appellant.

Conn, J. On April 9, 1953, the Grand Jury of Erie County returned an indictment against the defendant, Johnnie Morris, wherein it was alleged that on April 5, 1953, defendant "unlawfully, purposely and with deliberate and premeditated malice, killed one Huston Pickett * * *."

To this indictment, the defendant pleaded not guilty. Upon trial, the jury returned a verdict of guilty as charged, with a recommendation of mercy. Motion for new trial was overruled, and the trial court entered a judgment on the verdict and sentenced the defendant to the penitentiary for and during the period of his natural life.

From such judgment, defendant has appealed to this court

*Motion for leave to appeal overruled, June 9, 1954. Appeal dismissed, 161 Ohio St., 591.

on questions of law. The errors assigned, abridged somewhat and set up in the same order as disclosed in defendant's brief, are as follows:

1. The facts supporting the indictment are insufficient in law upon which to rest an indictment for first degree murder.

2. Certain statements in the opening statement of the prosecutor and in his closing argument to the jury were prejudicial to the defendant.

3. Admission of certain testimony, which was prejudicial, over objection of defendant. Also, the court erred in failing to charge the jury as to the purpose for which testimony was offered as to the conduct of defendant prior to the shooting.

4. Failure of the court to direct a verdict of acquittal at the close of state's case.

5. The court erred in its general charge to the jury and in refusing to give special instructions requested by defendant.

6. The judgment of the trial court is against the weight of the evidence and is contrary to law.

The evidence discloses that the defendant, his wife and three children lived on South Harrison Street, Sandusky, Ohio, in a small, two-room quonset type of building located back from the street, which building defendant rented from Oscar Robinson during the past five years; that on the morning of April 5, 1953, the defendant observed certain automobiles parked on his lot in front of his residence, one car being located close to his front door which was the only means of ingress and egress to and from his house; and that his near neighbor, George Griffin, who lived in a house immediately to the north of defendant's house, spoke to defendant and told him he could not get his automobile out by reason of the parked cars.

Defendant thereupon inquired about the cars on his lot and, seeing his landlord, Oscar Robinson, across the street, called to him and asked him to come over. He did. Huston Pickett, the victim of the shooting, a nephew of Robinson, followed him over. Pickett was a large man, weighing 200 pounds. The defendant asked Robinson to have the owners of the cars remove them, but Robinson informed him that he had rented the property to him, and that he had nothing to say.

Thereupon, Pickett spoke to defendant about the automo-

biles and told him he did not own a car, to which defendant replied that he then had nothing to say to him. Pickett then started an argument, using some abusive and profane language towards defendant, with threats to harm him. As Robinson was leaving, defendant asked him to take Pickett with him but Pickett refused to go and again threatened defendant.

Defendant then said to Pickett that he wanted to go across the street and ask Smiley Martin if he knew who owned the cars, but Pickett told him he wasn't going any place and to get on into the house and that if he did not do so he, Pickett, would cut his throat.

The evidence from this point on to the time of the shooting is conflicting, and it is not clear as to the sequence of events.

Defendant testified in substance that because of Pickett's threats he went into his house and Pickett stood outside about three feet from his door and continued his threats and abusive language; that he feared Pickett and, as there was no back door to his house, he was afraid Pickett would hem him in; that he then got his shotgun, put two shells into it and stepped out in front of the door; that a neighbor, who was a cousin of Pickett, asked Pickett to leave, but he refused to go; and that after some further movements Pickett then started toward defendant and, with a threatening manner and opening his knife as he came, said "I'm going to kill you this evening or you kill me."

Defendant further testified that he first shot in front of Pickett, without intending to hit him, to get him to stop, but he didn't stop, and, as he came nearer, defendant fired the second shot, which was fatal.

The evidence of abusive and threatening language of Pickett, directed toward defendant, and the position of defendant in relation to the front door of his house immediately preceding the shooting were substantially corroborated by defendant's witness, George Griffin, and in part by the state's witnesses. On the other hand, the record discloses sharp conflict as to what was said by defendant before and after the shooting; also, what he and Pickett said to each other, and their relative positions and movements immediately before the shooting.

The coroner testified that the pellets of the first shot entered the body at an angle of about 30 degrees to a vertical line

and would not cause death, and that the greater part of the load of the shot did not hit the body. He also testified that the second shot entered decedent's neck and was fatal. On rebuttal, he testified that the greatest distance the second shot could have been fired was four feet or less.

The testimony of defendant, given at the trial, including his extended and searching cross-examination, was consistent with his lengthy written statements previously given to the police, and almost wholly free from contradiction.

■ In support of his first assignment of error, defendant claims that the facts outlined in the opening statement of the prosecutor were insufficient to support an indictment for murder in the first degree as defined in Section 12400, General Code (Section 2901.01, Revised Code). At the conclusion of the prosecutor's opening statement, counsel for defendant moved the court that a juror be withdrawn and a verdict of acquittal be entered. This motion was grounded on the claim that the opening statement contained no representation that the evidence would show that the fatal shooting of Pickett was done with premeditated malice and was intentional.

In civil cases, on an issue raised by a motion for judgment on the opening statement of counsel, the facts pleaded, and as outlined by counsel in his opening statement, are taken as true and those facts thus admitted and the reasonable inferences that arise therefrom are to be construed liberally in favor of the party against whom the motion is directed.

39 Ohio Jurisprudence, 884, Section 226; *Czellath* v. *Schaub*, 37 Ohio App., 232, 174 N. E., 599. See, also, *State* v. *Lowenstein*, 109 Ohio St., 393, 142 N. E., 897, 35 A. L. R., 361.

Applying to the instant case the same rule as obtains in civil actions, and when tested by this rule, we conclude that the motion under consideration was not well taken and the trial court did not err in overruling it.

■ Defendant claims that certain portions of the opening statement of the prosecutor and, also, statements in his final argument were prejudicial.

In respect to the opening statements of counsel, Section 13442-8, General Code, subsection 1 (Section 2945.10 [A], Revised Code), provides that counsel for the state must first state

the case for the prosecution and briefly state the evidence by which he expects to sustain it.

The record discloses that a number of objections were made to comments of the prosecutor in his opening statement, including references to defendant, that during the morning of the day of the shooting he had made threats as against the owners of the cars parked on his premises and had loaded his shotgun with the intention of committing murder on anybody he could find who owned the cars in his yard.

Objections were also based on the claim that the character of the statements of the prosecutor was inflammatory and tended to create prejudice against the defendant.

It is evident that any threats against owners of the automobiles which may have been made in the forenoon of the day the shooting occurred would not be competent on the issue of premeditated malice directed against Pickett, who did not own a car and who, in view of the circumstances which arose independently of the parked cars, was only remotely related to the complaint made by defendant against such owners.

We call attention to the rule announced in *State* v. *Moore*, 149 Ohio St., 226, 78 N. E. (2d), 365, where the defendant, Moore, had been indicted for murder in the second degree of one Herman Hall. Defendant was convicted of manslaughter, and upon review in the Court of Appeals, the judgment of conviction was reversed on the sole ground that the trial court had erred in admitting testimony of one Morgan, relative to the conduct of defendant towards him, previous to the commission of the crime charged, when as a tenant of Morgan he had threatened to kill him. This testimony was received by the trial court under the provisions of Section 13444-19, General Code. In affirming the judgment of the Court of Appeals, the Supreme Court held that under the statute "like acts or other acts" of defendant to show intent or motive, to be admissible, must be "so related to the offense for which a defendant is on trial that they have a logical connection therewith and may reasonably disclose a motive or purpose for the commission of such offense."

We quote the second paragraph of the syllabus:

"In a prosecution for felonious homicide, testimony as to

threats made by the defendant against a third person sometime prior to the killing, with which former incident the deceased had no connection and which formed no part of the affair in which the deceased was killed, is not, over objection, admissible in evidence against the defendant.''

That case was cited with approval in *State* v. *Cochrane*, 151 Ohio St., 128, 134, 84 N. E. (2d), 742. See, also, 12 Ohio Jurisprudence, 336, Section 323.

Defendant also asserts as error certain statements made in the closing argument of the prosecutor. Defendant charges that in several instances the statements so made tended to arouse prejudice against him. Objections were made from time to time, and on one or more occasions the prosecutor withdrew the statement objected to.

It appears that several of the statements complained of were distracting and in content were inflammatory, such as the following, referring to defendant as a ''vicious beast,'' ''depraved, debased brute,'' ''depraved criminal,'' ''a man whom I believe to be as evil, as wicked, as depraved and malicious as any criminal who ever prowled,'' ''turning loose a brutal killer like Johnnie Morris would make of this city and this county a great volcano of vice and crime and violence and murder'' ''and if you let that prowling brute who desecrated Easter Sunday by drinking a half a pint of whiskey for breakfast and part of a bottle of wine for his noonday meal and prowled around that neighborhood and was warned and worked himself deliberately into that state of mind where he committed this violent, brutal, unprecedented, vicious crime—if that brute is allowed to go with anything less, every marauding, vicious beast who prowls the streets in the areas in this territory will be aware of it.''

Arguments made before a jury should be confined to the evidence. Counsel has considerable latitude in making deductions and drawing inferences, as long as they are based on credible and substantial evidence as a predicate. A prosecuting attorney, as an officer of the law, has the duty to conduct the state's case with vigor and alertness, so that the guilty may not escape punishment. He also has the correlative duty to observe

the rules of practice and the proprieties of argument, so that in every case no injustice is done the accused.

In the instant case, objections were promptly made, but if in a given instance no objection was made, and it is apparent on the record that the debasing characterizations directed toward the accused were wholly without support and so clearly flagrant as to prevent a fair trial, nevertheless error may be grounded thereon. See *Scott* v. *State*, 107 Ohio St., 475, 141 N. E., 19; *State* v. *Nevius*, 147 Ohio St., 263, 283, 71 N. E. (2d), 258, and cases cited, where the court recognized the rule above stated.

We call attention, also, to that portion of the closing argument of counsel for the state wherein it was intimated that in the event of a conviction of murder in the first degree a recommendation of mercy would be appropriate. A recommendation of mercy is exclusively the function of the jury under instructions of the court and, where, as in this case, the fatal shooting was admitted and the defendant claimed he acted in self-defense, the suggestion made by counsel for the state tends to unduly influence the rendition of the verdict, to the prejudice of the defendant.

The defendant in this case was entitled to the protection that the legal presumption of good character affords. Furthermore, the record discloses that defendant has been a resident of Sandusky for a number of years, is married, has a family, and is employed, and the inferences are clear that he has been a peaceful and law-abiding citizen.

The references to defendant, as above indicated, were without support, either on the evidence or by reasonable inference, and prejudicially affected his right to have a fair trial.

The admission of certain testimony on rebuttal over objection is assigned as error, with a related assignment of error that the court failed to charge the jury as to the limited purpose for which that evidence was received.

In its case in chief, the state called as its witness Smiley Martin. Certain testimony of such witness was objected to by defendant. The jury was excused and the witness examined in its absence, and the court thereupon sustained defendant's objection.

In defendant's case, Jimmy Bradley was called as a witness. Over objection, he testified that he had formerly lived in Alabama in the same community with Pickett and knew him for eight years. This witness was then asked as to the reputation of Pickett as to being quick with a knife. The prosecutor objected to that testimony, but the court admitted it solely for the purpose of aiding the jury in determining "who was the aggressor." The witness then testified that he knew of two persons Pickett had cut with a knife, and of other instances wherein he threatened to use a knife. Such evidence was admissible as tending to provide a basis for an inference that Pickett had a knife and threatened to use it prior to the shooting, which was corroborative of evidence of the defense. Evidence of Pickett's reputation as to being a peaceful, law-abiding citizen was not admissible over defendant's objection, as it does not appear that defendant had any knowledge thereof.

In rebuttal, following the close of defendant's case, the state called several witnesses, including Smiley Martin, and also, S. P. Porter. Defendant interposed a general objection to the testimony of those witnesses, which was overruled. The witness Porter was permitted to testify at length to conversations had with defendant and his wife in defendant's home in the forenoon of the day prior to the shooting about the car being parked in defendant's yard, and that defendant had his gun and was going to use it to make the owners move them.

The witness Martin was permitted to give testimony along the same line as had been ruled out in the state's case in chief. Throughout this testimony, no mention of Pickett or of any relationship with him was made by either of those witnesses. The testimony given related to events that took place before Pickett came on the scene and to nonrelated circumstances which Pickett himself created. If this evidence was competent on any ground, it was admissible as a substantive part of the state's case in chief, and the fact that it may have tended to contradict certain evidence offered by defendant did not make it competent in rebuttal. It follows that, this testimony being incompetent in the state's case in chief, it did not become admissible by reason of being offered in rebuttal. The admission of such testimony was error and prejudicial to defendant. In view of such

conclusion, it becomes unnecessary to consider further the second part of this assignment.

■ We have reached the conclusion that the court did not err in overruling defendant's motion for a directed verdict at the close of the state's evidence, for the reason that there was no dispute that the second shot fired by defendant resulted in Pickett's death. Assuming the evidence did not establish premeditated malice, a verdict against defendant for a lesser offense might have been returned under the doctrine of merger, unless defendant showed he acted in self-defense.

■ The court's charge appears to be full and complete and, having charged fully on the law of self-defense, the court's refusal to give a further charge thereon as requested by defendant was not prejudicial.

In view of the foregoing, it becomes unnecessary to consider the remaining assignments of error.

The judgment of the Court of Common Pleas is reversed, and the cause is remanded thereto for a new trial.

*Judgment reversed.*

DEEDS, J., concurs.

FESS, J., concurring. I concur in the reversal of the judgment but do not believe that error can be predicated upon opening statements of what the state expects to prove, and upon which there is a failure of proof. However, inflammatory argument has no place in an opening statement.

In my opinion, the testimony of the defense witness Bradley relating to Pickett's proclivity to use a knife was too remote in time and place, in the absence of knowledge thereof on the part of the defendant at the time of the shooting, to be admissible. The erroneous admission of this testimony afforded no basis, however, for the admission on rebuttal of the state's evidence relating to the conduct of the defendant during the morning and of admonishments of the witnesses directed to the defendant. It may be observed that the defendant had testified that he had not touched the gun since the hunting season and not until Pickett had threatened him the afternoon of the shooting. The witness Porter's testimony that the defendant had pos-

session of the gun some time before the shooting was proper evidence in rebuttal.