THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HENRY OAKLEY, Appellant.

Third Department, May 16, 1960.

*David B. Alford* for appellant.

*Richard H. Farley, District Attorney,* for respondent.

HERLIHY, J.   It was charged that the defendant at his home during July, 1956 carnally abused a child, eight years of age, and repeated the abuses in a barn the following morning.

The trial of this type of case causes great difficulty, due to the tender age of the child involved; the acts are unwitnessed and the testimony repulsive to a listening jury. Therefore, the closest scrutiny of the evidence is required to determine whether the defendant was fairly convicted and further whether there was a sufficiency of evidence to satisfy the requirements of the statute.

While the acts complained of happened in July, 1956, no complaint was made until December, 1957, when a State Trooper called at the home of the complainant and sought information from her mother concerning an investigation in no way associated with the present charge. As a result the little girl was taken to the principal's office in the school she attended, interrogated by the officers and a written statement prepared. Bulwarked with this, the troopers went to the home of the defendant and thereafter conversed with him in their police automobile where he allegedly made oral admissions resulting in his being taken to the home of the Justice of the Peace where a written statement was prepared and signed.

The defendant contends the convictions should be set aside for the following reasons:

1. His admissions were taken in violation of his statutory and constitutional rights as they were taken before a Magistrate before whom he was arraigned.

2. The child's statement and defendant's do not corroborate each other.

3. The indictments should have been dismissed after the People's opening statement.

4. The District Attorney improperly questioned a character witness of the defendant.

As to the latter, the attorney for the defendant made no objection at the time of the questioning of one of defendant's character witnesses but participated in such questioning. When a defendant produces a character witness, a new phase enters a criminal case and the door is opened (evidentiary) so that the District Attorney is given reasonably broad latitude in testing the knowledge and reasons forming the basis of the witness' opinion.

In *People* v. *Laudiero* (192 N. Y. 304) at page 309 the court said: "It, therefore, became entirely proper on cross-examination to show by the witness what she had heard with reference to his character, upon which she based her judgment that he was a good and peaceable man." By calling this type of witness the defendant assumes the risk of any unfavorable testimony adduced by the People on cross-examination and the questions in this case asked by the District Attorney were not in conflict with this rule.

Section 388 of the Code of Criminal Procedure states in part that the District Attorney must open the case, the purpose being to acquaint the jury and defendant in a general way with the crime charged and a broad outline of the People's case. We think the statement here sufficed to meet this requirement. The District Attorney, after explaining the charge, told of the statement given by the child, the confession of the defendant, the procedural difficulties which might be encountered with the little girl as a witness and commented: "I would be the first to ask this jury to find this man not guilty if you are not satisfied as to the testimony of this little girl or if you do not feel his admissions against interest were obtained under proper circumstances".

The objection of counsel for defendant was that the opening failed "to state facts sufficient to constitute a violation of the law". We find the opening of the case to the jury by the District Attorney met the mandate of the statute.

Before reaching the question of corroboration, we first consider the circumstances surrounding the taking of the confession.

It is not disputed that about 10:30 P.M. on the night of December 5, 1957 two members of the State Police went to the defendant's home, informed him they had a personal matter to discuss and he willingly went with them to the State Police car parked in front of his home where he was accused of the acts herein complained of. There was no physical violence, duress, or any substantial threats and the defendant denied the charges until he was asked if he wanted to lose another child — a sister of complainant — who had been living at his home since infancy. The troopers contend that he then admitted the incident which took place at his home and later — while still in the automobile — acknowledged the second affair.

The aftermath of these oral admissions resulted in taking the defendant to the home of a Justice of the Peace and there are many discrepancies in the testimony as to just what took place there. After giving defendant all of the legal protection to which he was entitled as outlined in the charge of the court,

the jury could readily have found that one of the troopers sat at the typewriter in the home of the Justice and transcribed the colloquy which was thereafter read, at least twice, to the defendant who then voluntarily signed it in the presence of the witnesses, the State Police and the Justice of the Peace; thereafter an information was prepared and signed by the officers, read to defendant, the Justice advised him of his right to counsel and right to an examination. Such procedure in rural counties is not unusual or uncommon. The jury could clearly determine and decide the confession was made after arrest but before arraignment and we cannot, as a matter of law, say such decision was erroneous. The manner and method of taking confessions are carefully scrutinized by the courts and it requires law-enforcing officers and magistrates in the first instance to be doubly certain there is no element of possible confusion, mistake or misunderstanding in the procedural requirements of the Code of Criminal Procedure. Here, the defendant knew one of the officers and while he stated he was afraid of troopers — '' everybody is '' — we find no basis to support his claim of a violation of his constitutional rights.

Finally, there is the matter of corroboration and the sufficiency of the evidence to sustain the convictions.

The defendant primarily attacks the discrepancies in the description of events as related by the complainant and by himself. We are satisfied that the difference in descriptions does not affect the essential elements necessary to constitute the crime but it is rather a narrative as to the manner in which the events were accomplished and as to the acts of carnal abuse required to satisfy the mandate of the statute, they were sufficiently corroborated.

As to the sufficiency of the evidence to sustain the convictions, there is a much more serious problem. There was no immediate complaint by the child — she explained the defendant threatened her — and after the mother had knowledge, no affirmative action on her part until by chance a State Trooper visited her home. There was some sketchy testimony that the mother bore a grievance against the defendant but the evidence on this point was such that the jury could well have disregarded it. After scrutinizing the little girl's testimony, it is difficult to believe she was fabricating the story. We find nothing in the record sufficient to convince us that the State Police unduly or unlawfully invaded the rights of the defendant. While the statement he gave apparently required some persuasion, it was voluntary. These determinations were all matters within the province of the jury and after reading the complete record, while the testi-

mony might have been clearer and more convincing, that is not the yardstick applicable. The jury had the opportunity of seeing and hearing the witnesses and consequently its appraisal of their reliability and credibility transcends a written record.

It is apparent that the attitude of the District Attorney and the court was extremely fair and impartial. Said the District Attorney in summation: '' You must consider the testimony of this little girl very carefully, as I started to say, and her attitude. If you believe it is a put-up proposition of some nature by her mother or any other person, is [if] that is the conclusion of these twelve people on this jury, I surely expect you to acquit this defendant. No question about that.''

The charge to the jury by the court was clear and comprehensive, to which there were no exceptions. The record shows: '' The defendant requests you to charge the jury that when officers charged with the enforcement of law through undue zeal or an inordinate desire to obtain evidence through threats or promises of clemency, procure incriminating statements from persons subsequently charged with a crime, they are inadmissable, are involuntary and procured under compulsion '' and the court so charged.

In *People* v. *Lytton* (257 N. Y. 310) the court said at page 313: '' Inconsistencies and uncertainties are not lacking altogether. They are not so vital as to condemn the verdict. A question of fact remains, involving an appraisal by a jury of the credibility of witnesses, and incapable of satisfactory solution by the study of the printed page (*People* v. *Rodawald,* 177 N. Y. 408, 419, 420; *People* v. *Taylor,* 138 N. Y. 398; *People* v. *Egnor,* 175 N. Y. 419, 425). ' There can be no reversal of the judgment without breaking down the barriers that separate the functions of a jury from those of an appellate court ' (*People* v. *Arata,* 255 N. Y. 374, 375).''

See, also, *People* v. *Vargas* (7 N Y 2d 555 [decided April 1, 1960]).

These are difficult cases as to proof, and, if, as here, the court was satisfied that there was a sufficiency of factual evidence to submit to a jury, followed by a proper and complete charge and the resultant verdict is adverse to the defendant, we hesitate to change that finding of guilt.

The judgment of conviction should be affirmed.

BERGAN, P. J., COON, GIBSON and REYNOLDS, JJ., concur.

Judgment of conviction affirmed.