LARRY WHITE, HOMER BENSON DANCY, AND
GILBERT LAWRENCE CLARK *v.*
STATE OF MARYLAND

[No. 372, September Term, 1970.]

*Decided March 15, 1971.*

424

The cause was argued before ORTH, THOMPSON, and MOYLAN, JJ.

*Gerald A. Kroop* and *Michael E. Kaminkow* for appellants.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Samuel A. Green, Jr., State's Attorney for Baltimore County,* and *Charles E. Foos, III, Assistant State's Attorney for Baltimore County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellants, Larry White, Homer Benson Dancy and Gilbert Lawrence Clark, were all convicted in the Circuit Court for Baltimore County by a jury, presided over by Judge Walter R. Haile, of the crime of breaking into a storehouse and stealing therefrom goods of the value of $5.00 and upwards.

On appeal, they make four contentions:

(1) That the trial court erroneously denied their Motion for a Judgment of Acquittal at the end of the prosecution's opening statement,

(2) That evidence of the appellant Dancy's prior convictions was erroneously introduced to the prejudice of all three appellants,

(3) That the trial court erroneously failed to grant the appellants' Motion for a Judgment of Acquittal at the close of the entire case, and

(4) That the trial judge improperly charged the jury on the effect of the appellant Dancy's prior convictions in assessing his credibility.

The initial issue raised by the appellants——whether a motion for a judgment of acquittal may ever lie at the end of the State's Attorney's opening statement because of some inadequacy in that statement—is one of first impression in Maryland. After the jury was selected and sworn and before the first witness was called, the Assistant State's Attorney made an opening statement to the jury. At the conclusion of that statement the appellants moved for a judgment of acquittal on the ground that the statement did not make out a *prima facie* case of guilt —establishing the *corpus delicti* of the crime but not the criminal agency of the appellants. The trial court denied the motion on the ground that there is no obligation upon the prosecutor to set out a full case in the course of his opening statement, if he chooses to make one. The imaginative attempt of the appellants to take an infrequently invoked and not universally recognized procedure from the trial of a civil suit and to engraft it—by analogy —onto the criminal trial cannot, however, prevail.

Although the issue does not appear ever to have been squarely raised in this State, in civil litigation the power of the trial court in its discretion, on proper motion, to direct a verdict on the opening statement of counsel seems generally, although not universally, conceded. Such motions for a directed verdict based upon the opening statement of counsel alone are not, however, very frequently resorted to and are only granted where exceptional circumstances imperatively require it. As has been pointed out in a number of cases, the practice of directing a verdict in advance of the introduction of evidence, upon the opening statement of one or the other party, is a dangerous one and the power of the court to do so should be exercised with great caution. Generally, it may be said

that the action of the trial court in directing a verdict on the opening statement of counsel can be upheld only where it is clear that all facts expected to be proved, and that have been stated, will not constitute a cause of action or a defense. When the opening statement is merely intended to indicate the issues of fact to the jury and the party is at liberty to present evidence not mentioned in his opening statement, it has been ruled that a verdict may not be directed upon such opening statement by reason of admissions therein. 53 Am. Jur. *Trial* § 371. See also Annot., 83 A.L.R. 221; Annot., 129 A.L.R. 557; *Best v. District of Columbia*, 291 U. S. 411; *Oscanyan v. Winchester Repeating Arms Company*, 103 U. S. 261.

The employment of so stringent a remedy is premised "on the theory that the time of the court and the jury would be wasted, since the result, if the evidence were introduced, would necessarily be the same; that it would be an idle waste of time to hear evidence which could not benefit the party offering it." 53 Am. Jur., loc. cit. So drastic a remedy is carefully circumscribed, however, and the courts which have employed it have universally held that it may not appropriately be invoked simply where counsel through inadvertence has failed to state sufficient facts, where the opening statement is ambiguous or subject to more than one interpretation or where that statement is simply lacking in definiteness. *Best v. District of Columbia, supra.* It can only be invoked where the full, exact and explicit statement of one party makes it clear that the party cannot, in law, prevail. Even after the motion for a directed verdict is made, the party whose opening statement is thereby attacked will be afforded full opportunity to qualify or amplify the statement in order to repair any inadequacy. Annot., 83 A.L.R. 221; Annot., 129 A. L. R. 557. See also 14 Ann. Cas. 700.

The first clear utilization of this essentially civil device to benefit a criminal defendant appears to have been little more than an inadvertent application of civil procedure to a criminal trial. In *United States v. Dietrich*, 126 F. 676 (1904), the case primarily relied upon by the

appellants here, an outgoing governor of Nebraska and United States senator-elect was charged with receiving a bribe while being "duly elected, qualified and sworn according to law to perform the duties of" a United States senator. The full and complete opening statement of the United States Attorney made it plain that although the defendant was elected to the United States Senate on March 28, 1901, he was not sworn in as a senator until December 2, 1901, and that the alleged bribery in question clearly took place long before that latter date. Under the circumstances, the defendant moved for a directed verdict of acquittal at the close of the prosecutor's opening statement. The court granted the motion in an opinion which devoted a single paragraph to the proposition and which relied exclusively upon civil precedent. The court held at 677-678 :

> "Where, by the opening statement for the prosecution in a criminal trial, and after full opportunity for the correction of any ambiguity, error, or omission in the statement, a fact is clearly and deliberately admitted which must necessarily prevent a conviction and require an acquittal, the court may, upon its motion or that of counsel, close the case by directing a verdict for the accused. The court has the same power to act upon such an admission that it would have to act upon the evidence if produced. It would be a waste of time to listen to evidence of other matters when at the outset a fact is clearly and deliberately admitted which must defeat the prosecution in the end." [citations omitted.]

In the several cases in the lower federal courts to consider this question since 1904, the holding in *Dietrich* is not repudiated but is severely limited to the extreme circumstances applying in that case. In *Rose v. United States,* 149 F. 2d 755 (1945), the Circuit Court of Appeals for the Ninth Circuit affirmed the conviction in the district court for conspiracy. At the close of the Govern-

ment's opening statement, the defendants had moved to dismiss the indictment on the ground that the facts stated by the United States Attorney did not constitute conspiracy. The district court denied the motion and ruled that the Government could make a further opening statement to supply any elements missing from the statement under attack. In affirming the conviction, the court said at 758:

"The purpose of an opening statement is merely to advise the jury of the questions and facts involved in the matter before them. The court is justified in terminating a case after the opening statement of plaintiff's counsel only when the statement affirmatively shows that plaintiff has no right to recover, and only when the opportunity to correct or embellish it has been given plaintiff subsequent to defendant's motion to dismiss or to direct a verdict." [citations omitted.]

In *Webb v. United States*, 191 F. 2d 512 (1951), the United States Court of Appeals for the Tenth Circuit made clear that a directed verdict at the end of the prosecution's opening statement would be appropriate only in the most extreme circumstances. The court said at 515:

"We find no merit in the contention of the defendant that the court should have directed a verdict for the defendant upon the opening statement of the prosecution. Opening statements are merely to advise the jury as to what it may expect by way of evidence and questions which will be presented to it. It is not evidence and is merely for the assistance of the jury. *In rare instances the opening statement of a party may show affirmatively that it has no right to recover, or in a criminal case that the prosecution cannot make a case. Rose v. United States, 9 Cir., 149 F. 2d 755, 758.* The opening statement here explained the indictment and the evidence

which the prosecution expected to introduce to sustain it. It did not show affirmatively that the prosecution should not prevail." (emphasis supplied.)

Aside from some dicta in the State of Ohio (a state, unlike Maryland, wherein an opening statement by the prosecutor is mandatory), these federal cases supply the only predicate to support the statement in 23A C.J.S. *Criminal Law* § 1145(3) (f) that "The trial court has the power to direct a verdict on the opening statement of prosecuting counsel, but should exercise it only when it appears that the charge against accused cannot be sustained under any view of the evidence consistent with it, and only when the prosecutor has been given opportunity to correct the statement." See *State v. Morris,* 136 N.E.2d 653, and *State v. Karcher,* 98 N.E.2d 308, for the Ohio dicta.

In arguing the necessity for such a post-statement, pre-evidentiary remedy, the appellants rely upon the recitation in 23A C.J.S. *Criminal Law* § 1085, p. 98, to the effect that opening statements have the purpose of "informing an accused of the contemplated course of the prosecution and of the facts relied on by the prosecution, so as fairly to enable him to meet the charge against him." A fuller reading of the article reveals that this is a very distinct minority position, relying almost exclusively on *State v. Deppe,* 286 S.W.2d 776 (Missouri), as its authority. The strong majority position is that, "The office or purpose of an opening statement is to advise the jury concerning the questions of fact involved, so as to prepare their minds for the evidence to be heard." 23A C.J.S. *Criminal Law, loc. cit.; Handley v. State,* 214 Ala. 172; *Turley v. State,* 48 Ariz. 61; *Stanley v. State,* 174 Ark. 743; *People v. Green,* 47 Cal. 2d 209; *People v. Gomez,* 131 Colo. 576; *People v. Reed,* 333 Ill. 397; *Bolden v. State,* 199 Ind. 160; *State v. Kendall,* 200 Iowa 483; *Lickliter v. Commonwealth,* 249 Ky. 95; *State v. Simpson,* 216 La. 212; *State v. Olivieri,* 49 Nev. 75; *State v. Borrego,*

52 N. M. 202; *People v. Oakley,* 200 N.Y.S.2d 961; *Hilyard v. State,* 90 Okl. Cr. 435; *State v. Reynolds,* 164 Ore. 446; *State v. Erwin,* 101 Utah 365.

Maryland is clearly in line with this majority position that the office of "an opening statement in a criminal prosecution is to apprise, with reasonable succinctness, the trier of facts with the questions involved and what the State or defense expects to prove, so as to prepare said trier of the facts for the evidence to be adduced. . . An opening statement by counsel is not evidence. . .and it generally has no binding force or effect." *Clarke v. State,* 238 Md. 11, 19-20. In this jurisdiction, as in most, the decision of whether or not to make an opening statement in a criminal prosecution is completely discretionary with counsel on either side of the trial table. To exercise the option of making this preliminary address to the jury or to waive such opportunity is a tactical consideration resting exclusively with trial counsel. Since there is no requirement that an opening statement be made in the first instance, it follows that there can be no requirement that such statement spell out all elements of the crime charged or that it set out facts sufficient to establish a *prima facie* case of guilt.

Furthermore, Maryland Rule 755 b (Motion for Judgment of Acquittal—When Made) sets out explicitly the only two occasions when a motion for judgment of acquittal (which motion has superseded the earlier motions 1) for a directed verdict of not guilty and 2) for an instruction that the evidence is insufficient in law to sustain a conviction) may properly be made:

> "A motion for judgment of acquittal on one or more counts, or one or more degrees of an offense, may be made by an accused at the close of the evidence offered by the State, or may be made at the close of all the evidence, whether or not such motion was made at the close of the evidence offered by the State. If the motion is not granted at the close of the evidence offered by

the State, the accused may offer evidence without having reserved the right to do so, but by so doing, he withdraws his motion."

The second contention of the appellants is that the trial court committed error in permitting the State to cross-examine the appellant Dancy as to his prior criminal record without first satisfying itself that such prior criminal convictions had not been obtained without Dancy's having had the assistance of counsel or having had effectively waived the right to counsel. *Burgett v. Texas,* 389 U. S. 109, established that to permit a conviction obtained without the assistance of counsel or a valid waiver thereof to be used against a person either to support guilt or enhance punishment for another offense is a violation of the right to counsel guaranteed by the Sixth Amendment to the Federal Constitution and applicable to the states by virtue of the Fourteenth. In *Johnson v. State,* 9 Md. App. 166, this Court held that, by logical extension, the *Burgett* principle would apply to the use of prior convictions offered by the State to impeach the credibility of a defendant testifying in his own behalf. The *Johnson* case also set out the procedure to be followed by the trial court when timely objection is made to the use of such prior convictions by the State for impeachment purposes. Our decision in *Johnson* was handed down on March 17, 1970, some six weeks before the trial of the case now under review and was therefore binding upon the lower court in the instant case.

Prior to placing the appellant Dancy on the stand to testify in his own behalf, his counsel asked that the jury be excused and moved that, under the principle of *Burgett v. Texas, supra,* the State be foreclosed from cross-examining Dancy about any prior convictions unless the State could first show that such convictions were not unconstitutionally obtained in violation of *Gideon v. Wainwright,* 372 U. S. 335. Counsel proffered to the court that Dancy was not represented by counsel at several of his previous criminal convictions and further that Dancy had

not waived the presence of counsel on those occasions. The issue thus raised by the *Burgett* and *Johnson* cases was, therefore, squarely before the court.

In *Johnson* we held that when an objection of this nature is explicitly made, preferably out of the presence of the jury, the court shall then conduct a hearing out of the presence of the jury. At such hearing, the State shall first have the burden of producing evidence of a prior conviction, unless admitted by the defendant, sufficient to justify a finding by the court that the defendant has suffered such previous conviction. When this showing has been made, the defendant must then produce evidence tending to establish that his constitutional right to counsel was infringed in the prior proceeding at issue. Having already elected to testify, he may assert under oath that he was without counsel at the prior proceeding and did not waive the right to counsel. He is, of course, subject to cross-examination by the State on the point. The burden is then upon the State to prove by clear and convincing evidence that the defendant's constitutional right to counsel was not infringed at the prior proceeding. The court shall make a finding on the basis of the evidence thus produced and shall exclude from the trial on the merits any prior conviction found to be constitutionally invalid. *Johnson v. State, supra,* 177-178.

In the instant case the court overruled the appellant Dancy's motion to preclude the State from cross-examining about prior convictions and declined to hold the type of hearing suggested by *Johnson.* The court applied the pre-*Burgett* law on this subject, articulated by this Court in *Boone v. State,* 2 Md. App. 80.

Dancy proceeded to testify in his own defense. On cross-examination, it was elicited from him that he had been on three occasions convicted of the unauthorized use of an automobile—(1) on February 8, 1965, (2) on October 26, 1965, and (3) on August 26, 1966. At that stage of the proceedings, all three of the prior convictions were before the jury in contravention of the procedure set out in *Johnson* to implement the principle of *Burgett.* After

the jury returned its verdict of guilty, the appellant Dancy took the stand during the pre-sentence discussion. He there testified, under oath, that on the occasions of his October 26, 1965, and August 26, 1966, convictions he was not represented by counsel and he had not waived his right to counsel.

There remains the question of whether this error may be deemed harmless. In applying the "harmless error" doctrine of *Chapman v. California,* 386 U. S. 18, to the principles established by *Burgett,* this Court said in *Johnson, supra,* at 179-180:

> "It is error of constitutional dimension for the court to admit into evidence a prior conviction obtained by a proceeding in which the defendant's constitutional right to counsel was infringed. But this is not to say that the error can never be harmless. . . .
>
> We think that whether or not the error can be found to be harmless depends on the particular facts of each case. For example, that there were a number of prior convictions properly admitted, or other evidence clearly impeaching the credibility of the defendant would be of probative value in determining whether the admission of invalid convictions was harmless. And perhaps the gravamen of the offense, the conviction of which was erroneously admitted, could be weighed against the gravamina of the offenses, the convictions of which were properly admitted, in determining whether the error was harmless. We note that in *Suggs v. State, supra,* at 236, we recognized that impeaching evidence can have the utmost impact upon the jury in its resolution of close questions of credibility."

Under the circumstances of this case, we cannot say that the error was clearly harmless. The testimony of Dancy and of his codefendant Clark was an absolute contradiction of the testimony of the key State's witness,

Robert Nuckles. The credibility of Dancy was, therefore, critical to the defense and presented a situation very like that in *Suggs v. State,* 6 Md. App. 231, where this Court said at 236:

> "It is equally plain that appellant's credibility as a witness was vitally important to his defense, since his denial of complicity in the crime was contradicted by two witnesses who testified flatly that he was one of the holdup men. Under the circumstances of this case, we think that the evidence of the prior conviction carried such force that it can in no event be deemed as harmless to appellant's defense."

That the question of guilt or innocence was close in this particular case was underlined by the fact that after one hour and forty-five minutes of deliberation, the jury reported that it was deadlocked. Nor can this Court ignore the fact that all three appellants were arrested in suspicious proximity at an early morning hour to a stolen car and that all three of the appellants' prior convictions were for the unauthorized use of an automobile. Whether we were to look at all three of the prior convictions offered against Dancy in violation of the procedures outlined in *Johnson, supra,* or whether, giving the State the benefit of the information adduced during the pre-sentence discussions as to representation at one of his convictions, we were to look at two invalid convictions improperly offered as against one valid conviction properly offered, we cannot say, beyond a reasonable doubt, that the impact on Dancy's credibility was not prejudicial.

Since both Dancy and Clark did testify to the very same story and since all three appellants presented a common defense, we cannot say that the erroneous impeachment of Dancy's credibility did not inure to the detriment of all three appellants.

Since our decision on this question requires the convictions of all three appellants to be reversed, it is un-

necessary for us to consider the final two contentions made by the appellants.

> *Judgments reversed; case remanded for a new trial; costs to be paid by the Baltimore County Council.*