ROBERT CHATMAN *v.* STATE OF INDIANA.

[No. 2-973A199. Filed May 5, 1975. Rehearing denied June 12, 1975.]

*Frederick B. Robinson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellee.

WHITE, J.—Appellant (Chatman) was charged in a one count affidavit with the offense of robbery by putting in fear.[1] Following trial by jury he was convicted and sentenced to an indeterminate term of not less than ten nor more than twenty-five years.

On this appeal he alleges four errors:

1. The overruling of his oral motion to strike the special venire of prospective jurors for the reason that they had been present during two hearings on guilty pleas by other defendants in cases unrelated to his.

2. The overruling of his motion for directed verdict made at the conclusion of the State's opening statement, a statement which omitted the venue of the alleged offense.

3. The overruling of his objection to an allegedly leading question on the element of "putting in fear".

4. The overruling of his Motion to Suppress identification testimony he alleges to have been prejudiced by pre-trial photographic display procedures.

We affirm.

The evidence most favorable to the State is that appellant and an unidentified companion entered Highway Parts, a retail store in Indianapolis. While the only clerk was answering an inquiry of the companion, the appellant was moving about in a different section of the store. The clerk saw appellant put a tool box in his pants and told him to put the tool box back. Appellant refused to do so and the clerk started toward him to recover the tool box. At that time appellant drew a gun and told the clerk to back off and to get the money out of the cash register. The clerk backed up against the wall and the appellant reached over the counter and took the money. Then he and his companion left. The clerk called the police and gave them a description of appellant. The next day the clerk went to police headquarters and looked at about 200 photographs, all of blacks, none of whom he identified as the person

---

1. IC 1971, 35-13-4-6, Ind. Ann. Stat. § 10-4101 (Burns 1956 Repl.).

who robbed him. Approximately ten days later the police had him look at 8 or 10 additional photographs, again all of blacks. At that time the clerk identified one of the photographs, appellant's, as being of the person who had robbed him. The clerk identified appellant in court.

## I.

Chatman's argument in support of his contention that the trial court erred in overruling his oral motion to "strike" the special venire of prospective jurors is:

> "that as a result of the venire's hearing of these 'Guilty' pleas the said jury could not fairly and impartially render a verdict in his matter. The stigma of the admitted guilt of the individuals involved in the said cases would have had undue influence upon the instant venire, and thus they would have approached the trial of the Appellant with a negative attitude as to his innocence, thus members of the venire could in no way have been fair and impartial in rendering their verdict in Appellant's case."

Appellant's contention is speculation in its purest sense. One could as easily suppose that being in the courtroom at a time another defendant in an unrelated case enters a guilty plea would give a prospective juror reason to assume that guilty defendants plead guilty without trial and that Chatman's plea of not guilty is an indication that he is innocent.

Furthermore, there is no transcript in the record of what questions were asked and what answers were given by the members of the special venire when they were examined concerning their qualifications to sit as jurors, nor is there any record that any prospective juror was ever individually challenged for cause or peremptorily. The record does disclose the names of fourteen persons (twelve jurors and two alternates) who were selected from the regular panel and from the special venire and sworn as jurors and alternates, but there is no indication of which ones, or how many, of those fourteen came from the special venire. But the record does disclose that the defendant examined and accepted the jurors and alternates who were sworn to try the case.

For aught that appears on the record, Chatman could have (and may have) removed from the jury box every member of the special venire merely by exercising his peremptory challenges. Error, if any, in overruling a challenge is not available to an appellant (i.e., is harmless error) unless it be shown that he had exhausted his peremptory challenges. *Rock* v. *State* (1915), 185 Ind. 51, 53, 110 N.E. 212; *Sutton* v. *State* (1957), 237 Ind. 305, 307, 145 N.E.2d 425; *Torrence* v. *State* (1971), 255 Ind. 618, 620, 266 N.E.2d 1.

What we have just said should not be read as implying that the unique manner in which appellant attempted to challenge prospective jurors can ever be effective to preserve reversible error.

## II.

Appellant's second assigned error is equally innovative. Immediately upon the conclusion of the State's opening statement Chatman moved for a directed verdict, alleging that the prosecutor failed to state his case in the opening statement as required by IC 1971, 35-1-35-1, Ind. Ann. Stat. § 9-1805, in that he omitted venue.[2] His motion was overruled.

Neither appellant nor the state has cited any authority directly in point, and our own limited research indicates that cases in point are few. What authority there is can be found in the footnotes to 23A C.J.S. 379, Criminal Law § 1145(3)f, and the 1974 pocket part. The most exhaustive discussion of the question is found in *White* v. *State* (1971), 11 Md. App. 423, 274 A.2d 671. That discussion reveals that there is federal authority for directing a verdict of acquittal when the prosecutor's opening statement *affirmatively shows* that the prosecution cannot make a case. *United States* v. *Deitrich* (CA 8, 1904), 126 F. 676; *Rose* v. *United States*

---

2.  " 'By the word "venue" we mean the county in which the criminal acts are alleged to have occurred.' " *Strickland* v. *State* (1940), 217 Ind. 588, 595, 29 N.E.2d 950, quoting *State* v. *Jackson* (1918), 187 Ind. 694, 699, 121 N.E. 114. "It is necessary to support a conviction in a criminal case, that there be proof of the venue." *Ibid*, quoting *Harlan* v. *State* (1892), 134 Ind. 339, 341, 33 N.E. 1102.

(CA 9, 1945), 149 F.2d 755; *Webb* v. *United States* (CA 10, 1951), 191 F.2d 512. *White* then continues:

"Aside from some dicta in the State of Ohio (a state, unlike Maryland, wherein an opening statement by the prosecutor is mandatory), these federal cases supply the only predicate to support the statement in 23A C.J.S. Criminal Law § 1145(3) (f) that "The trial court has the power to direct a verdict on the opening statement of prosecuting counsel, but should exercise it only when it appears that the charge against accused cannot be sustained under any view of the evidence consistent with it, and only when the prosecutor has been given opportunity to correct the statement." See State v. Morris, 100 Ohio App. 307, 136 N.E.1d 653, and State v. Karcher, 155 Ohio St. 253, 98 N.E.2d 308, for the Ohio dicta.

"In arguing the necessity for such a post-statement, pre-evidentiary remedy, the appellants rely upon the recitation in 23A C.J.S. Criminal Law § 1085, p. 98, to the effect that opening statements have the purpose of 'informing an accused of the contemplated course of the prosecution and of the facts relied on by the prosecution, so as fairly to enable him to meet the charge against him.' A fuller reading of the article reveals that this is a very distinct minority position, relying almost exclusively on State v. Deppe, 286 S.W.2d 776 (Missouri), as its authority. The strong majority position is that, 'The office or purpose of an opening statement is to advise the jury concerning the questions of fact involved, so as to prepare their minds for the evidence to be heard.'" (274 A.2d at 674.)

The thesis of *White* is that only in those states where the opening statement serves the purpose of "informing an accused of the contemplated course of the prosecution" is the rule concerning directed verdicts quoted above in 23A C.J.S. 379, Criminal Law § 1145(3)f appropriate, while in those jurisdictions where the sole purpose of the opening statement is "to advise the jury" (the majority position), there is no logical basis for it.

To demonstrate that the "strong majority position" is that the opening statement's only purpose is to inform the jury, the *White* opinion cites sixteen cases from as many jurisdictions, including *Bolden* v. *State* (1927), 199 Ind. 160, 155 N.E. 824. But *White* overlooks *Blume*

v. *State* (1963), 244 Ind. 121, 129, 189 N.E.2d 568, 572, which states, on the sole authority of 23 C.J.S. 98, Criminal Law § 1085, that it "has the further purpose of informing the accused of the contemplated course of the prosecution, so as to enable him to meet the charge against him." A strict application of the logic of the *White* decision to that dicta from *Blume* plus the fact that Indiana's statute requires the prosecutor to "state the case of the prosecution and briefly state the evidence by which he expects to support it"[3] would tend to classify Indiana with the minority of states, such as Missouri and Ohio, which appear to have some reason for following the directed verdict rule from 23A C.J.S. 379, Criminal Law § 1145(3)f quoted in *White*. But regardless of whether Indiana should follow the C.J.S. rule it is not applicable at bar for at least two reasons: (1) The opening statement did not make it appear that the charge against the accused cannot be sustained under any view of the evidence consistent with it and (2) the prosecutor was not given an opportunity to correct the statement. Therefore we need not, and do not decide whether, in a case in which conditions (1) and (2) obtain, it would be proper to direct a verdict of acquittal on the prosecutor's opening statement. If the prosecutor, the defense attorney, and the court discharge their pre-trial discovery responsibilities it would appear next to impossible for a case to come to trial in which the prosecutor might have occasion to admit the truth of a fact which constitutes a complete defense (as in *United States* v. *Deitrich* [CA 8, 1904], 126 F. 676. But if he does so in his opening statement and, after being given full opportunity to correct it, confirms it, but does not dismiss, we fail to see what useful purpose can be served by requiring the trial to continue until the State has introduced all its evidence and has rested. Yet it is not until that point has been reached that our rules of procedure make any provision for a directed verdict or judgment of acquittal.[4] In the *White* case, *supra,* the Maryland Court of

3. Ind. Ann. Stat. § 9-1805 (Burns 1956 Repl.), First Clause.
4. There is no legislative enactment or Supreme Court ordered rule

Special Appeals deemed that state's similar rule worthy of mention as a reason for not directing an acquittal on the state's opening statement—a statement which established the *corpus delicti* but not the criminal agency of the defendants. However, the basic reason for the holding was that "[s]ince there is no requirement [In Maryland] that an opening statement be made in the first instance, it follows that there can be no requirement that such statement spell out all elements of the crime charged or that it set out facts sufficient to establish a *prima facie* case of guilt." (Ibid.) But since Indiana does make it mandatory that the prosecutor "state the case of the prosecution and briefly state the evidence by which he expects to support it" (Ind. Ann. Stat. § 9-1805, First cl.) we see nothing objectionable in a trial court's requiring a prosecutor (on the court's motion or on the defendant's motion) to state enough to show the court, the jury and the defendant that the State will present a *prima facie* case. If any sanction as drastic as a judgment of acquittal is to be the penalty for the prosecutor's failure to make such a showing, it should not be imposed until he has been made aware of the defect, has been given an opportunity to correct it, and has failed to do so.

The record in this case furnishes no basis, under the precedent of any jurisdiction, to reverse Chatman's conviction because the prosecutor failed to state in his opening that the robbery charged had been committed in Marion County, Indiana. The record suggests that he would have so stated had he been given the opportunity after the omission was called to his attention. The undisputed evidence proved proper venue and appellant has wholly failed to show that he was

which expressly authorizes a directed verdict of acquittal or a judgment of acquittal (in a jury trial) not based on a jury verdict of acquittal. However, both by statute (Ind. Ann. Stat. § 9-1102 [Burns 1974 Supp.]) and court rule (Indiana Rules of Procedure, Criminal Rule 21) the rules of civil procedure apply to criminal cases except when in conflict with a specific criminal rule, or otherwise are inapplicable. Therefore, Trial Rule 50(A) is applicable to criminal trials and authorizes a defendant to move for a judgment in his favor no sooner than "(1) after another party [the state] carrying the burden of proof . . . has completed his evidence thereon."

in any way harmed by the prosecutor's failure to state the venue. (In fact, it can reasonably be argued that he did state it by reference when he alluded to the court's having read the charging affidavit [which stated the venue] to the jury and that he clearly implied it to the Marion County residents sitting on the jury in a courthouse located at 200 East Washington Street in Marion County, when he said that the robbery occurred at 2101 East Washington Street.)

### III.

Appellant's third argument is that the trial court erred in overruling his objection to an allegedly leading question addressed to the victim witness, namely: "Did Chatman scare you when he pulled a gun on you?" His contention is that "putting in fear" is a necessary element of the crime of robbery and it is grave error to permit the proof of that necessary element through leading questions.

There can be no disagreement with appellant's classification of the question as leading, nor with his conclusion that the overruling of his objection was error. However, it was harmless error since there had already been introduced sufficient evidence to establish the element of "putting in fear". As the disputed question implies, and the record verifies, the witness had already testified that appellant had drawn a gun, had ordered the clerk to back up, and had taken money from the cash register under the protection of that gun. In a previous case involving an allegedly improper question concerning "putting in fear" we held that "It is not essential in a robbery conviction that the victim specifically testify that he was 'in fear' if there is sufficient evidence of probative value from which such inference might reasonably be drawn." *Perkins* v. *State* (1973), 156 Ind. App. 163, 294 N.E.2d 846, 847. See also *McTate* v. *State* (1971), 256 Ind. 55, 56, 267 N.E.2d 76, 77. In this case the jury could reasonably infer that the witness, a lone clerk facing an armed man demanding money, was "put in fear."

## IV.

Appellant's fourth argument is that the victim's in-court identification of appellant should have been suppressed because the pre-arrest photograph identification procedure used by the police was "impermissibly suggestive". Approximately 210 photographs, all of black suspects, were shown to that witness, "thus [appellant argues] indicating to the witness by direct reference that the individual who robbed him was a negro and formalizing in his mind that he would have to identify the robber as a negro."

This argument in the circumstances of the case at bar is patently frivolous. The robbery occurred in a lighted store and the robber was in that store, undisguised, for a period of five to ten minutes. This, more than any possible photographic array, would "indicat[e] to the witness by direct reference that the individual who robbed him was a negro."

Further, the same factors (undisguised robber in lighted store for five to ten minutes) would form a basis for in-court identification independent of the photographic identification. See *Daniels* v. *State* (1974), 160 Ind. App. 582, 312 N.E.2d 890, and *Calvert* v. *State* (1974), 160 Ind. App. 570, 312 N.E.2d 925.

The judgment is affirmed.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 326 N.E.2d 839.