■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN GUEST, Appellant.—Appeal by defendant from a judgment of the Supreme Court, Westchester County, rendered July 3, 1975, convicting him of sodomy in the first degree and sexual abuse in the first degree, after a nonjury trial, and imposing sentence. Judgment reversed, on the law and the facts, and indictment dismissed. Defendant herein stands convicted under the third (improperly designated "second" by the sentencing court) and fifth counts of a five-count indictment charging him with rape in the first degree, three counts of sodomy in the first degree, and sexual abuse in the first degree, all arising out of a series of incidents which allegedly occurred on the afternoon of June 17, 1974, in the Village of Ossining, New York. According to complainant, defendant accosted her on a busy street around noontime on the day in question and dragged her into a cellar apartment, where he committed three different types of sodomy upon her and concluded by raping her. During the course of these acts, complainant allegedly screamed for help at the top of her voice, but no one responded from the street, the

other apartments, or the neighboring stores, all of which were open and doing business. The assault presumably lasted for two hours. Defendant, a convict on furlough from the Ossining Correctional Facility, testified that he had never been in the Village of Ossining before, and that complainant had agreed to have sex with him for the price of seven dollars. He paid her the money and they entered the cellar apartment and had intercourse. Thereafter, when he refused to pay her more money, she fled the premises, crying "rape". In determining defendant's guilt or innocence, it was only after consultation with the prosecutor that the trial court was able to determine which activity was intended to be covered by each of the sodomy counts, as the indictment itself contained no specifics. This was also true of the sexual abuse count, which the court believed was related to one of the sodomy counts (presumably count four), but was, the People indicated, designed to cover only the preliminary touching of the complainant's private parts. Upon the whole case, the credible evidence establishes that defendant was a stranger in town, whereas complainant was a resident of Ossining, a drug addict, and had been known to use the premises in question for purposes of prostitution. Moreover, a friend of complainant testified that he had had sex with her later that same afternoon for the price of three dollars, while a timely medical examination failed to disclose that type of bruising which would normally be associated with an authentic rape. Without any direct evidence as to what took place in that basement apartment other than the testimony of the participants (which is diametrically opposed), there does not appear to be any logical basis for the court's election to adopt some middle ground between their testimony in the way it did. Under the facts of this case, such an attempt at "Solomonic" justice smacks of pure speculation. Thus, in view of the various acquittals entered herein, we find the contemporaneous convictions for sodomy in the first degree under the third count of indictment (which is worded identically with the second and fourth counts) and sexual abuse in the first degree to be unsupported by the credible evidence (see *People v McEaddy*, 30 NY2d 519). Furthermore, we find the indictment itself to be fatally defective in that it fails to allege any factual matter in its support, and, more particularly, fails to disclose the factual basis for each of the sodomy counts. An indictment which requires consultation with the prosecutor in order to establish which count refers to what conduct is legally insufficient (CPL 200.50, subd 7; *People v Barnes*, 44 AD2d 740; *People v Clough*, 43 AD2d 451; cf. *People v Rathbun*, 50 AD2d 677). Martuscello, Cohalan, Margett and Rabin, JJ., concur; Hopkins, Acting P. J., dissents and votes to reverse the judgment and to grant a new trial, with the following memorandum: In my view, the evidence before the Criminal Term supported the findings of guilt with respect to the second and fifth counts of the indictment. Whether the trial court believed the testimony of the complaining witness was a matter wholly within its competence, and I am not disposed to reach a conclusion as to the credibility of the evidence at variance with the determination of the trial court, distant as I am from the immediate impressions to be gained from observing and listening to the witnesses in the flesh. Nevertheless, I am compelled to vote to reverse and for a new trial because of the failure of the prosecution to open in this nonjury trial. Here, no opening statement, as such, was made by the People, although the defendant objected. True, the court asked the prosecutor to elaborate on counts Nos. 2, 3 and 4 of the indictment, but the prosecutor did no more than to respond that each was based upon separate types of sodomy. That, of course, would not suffice, if indeed an opening is required in a nonjury case. The provisions of CPL 320.20 (subd 3, par [a]),

read broadly, empower the trial court in a nonjury case to dispense with an opening statement by the prosecution. Such authority in the court must be contrasted with CPL 260.30 (subd 3), mandating an opening by the People in a jury trial. Under the latter provision, the failure of the prosecutor to make an opening statement is fatal to a conviction of the defendant by the jury *(People v Romano,* 279 NY 392; *People v McLaughlin,* 291 NY 480, 483; *People v Levine,* 297 NY 144, 147). Recently, another provision of CPL 320.20 (subd 3, par [c]) was declared unconstitutional, because in authorizing the court to dispense with a summation on behalf of the defendant in a nonjury trial, it breached the guarantee of the assistance of counsel under the Sixth Amendment *(Herring v New York,* 422 US 853, vacating judgment *sub. nom People v Herring,* 43 AD2d 816). The Sixth Amendment not only provides for the assistance of counsel, but also that the defendant "be informed of the nature and cause of the accusation". This right is greater than a simple reading of the allegations of the indictment, for in many cases the general evidentiary scope of the charge against the defendant is not found within the conclusory and traditional statements of the indictment. As we said in *People v Oakley* (10 AD2d 457, 459), the purpose of the opening is not only to acquaint the jury, but also the defendant, with a broad outline of the People's case. The opening, accordingly, not only informs the defendant in an evidentiary way of the case, but also affords the opportunity to counsel for the defendant to evaluate the People's case—and more importantly—to move on the opening to dismiss the charge for insufficiency to constitute a crime. Hence, the defendant is deprived of his right to be informed of the nature and cause of the accusation, and of his right to the effective representation of counsel in meeting the charge, when the court is allowed, in its discretion, to dispense with an opening statement by the prosecutor. The absence of an opening statement would be, in my view, a violation of the defendant's Sixth Amendment rights, and in the framework of this case, particularly damaging to the defendant. Five counts of sexual crimes were alleged in the indictment, apparently arising out of one encounter, consisting of one count of rape, three counts of sodomy, and one count of sexual abuse. The factual allegations of the indictment barely satisfied the requirements of CPL 200.50 (subd 7). For that reason, it was highly significant to the defendant that the charges against him be further described in the People's opening. Without it, he was placed at a gross disadvantage to defend himself. I would therefore reverse and direct a new trial.