JERRY WAYNE WARDLOW *v.* STATE OF INDIANA.

[No. 2-675A146. Filed March 10, 1977. Rehearing denied April 13, 1977. Transfer denied June 15, 1977.]

*Frank E. Spencer*, of Indianapolis, for appellant.

*Theodore L. Sendak*, Attorney General, *John R. O'Bryan*, Deputy Attorney General, for appellee.

SULLIVAN, J.—On February 6, 1974, Jerry Wayne Wardlow (Wardlow) was indicted for a violation of the 1935 Narcotic Act, IC 35-24-1-2. The alleged sale of cocaine, took place on January 29, 1973. On February 7, 1975 he was tried without a jury and was convicted of the offense charged. Sentence was imposed on February 27, 1975.

During the period between Wardlow's violation of the Narcotic Act and the date of his indictment, the General Assembly repealed the pertinent provisions of that Act and enacted the Controlled Substances Act. IC 35-24.1-1-1 *et seq.* (Burns Code Ed. 1975). The repeal of the Narcotic Act coincided with the effective date of the Controlled Substances Act, October 1, 1973.

Wardlow asserts upon appeal that:

(1)   the offense charged was not a prohibited act at the time he was charged, tried or convicted and that the conviction is therefore contrary to law;

(2)   the State failed to prove venue, i.e., that the offense took place in Marion County; and

(3)   the State's failure to make an opening statement before submitting evidence was a fatal omission.

We affirm.

## I.

## CONVICTION FOR VIOLATION OF 1935 NARCOTIC ACT WAS VALID NOTWITHSTANDING REPEAL OF THAT ACT

It is Wardlow's contention that because the Narcotic Act which defined and provided a penalty for the offense committed by him on January 29, 1973, was repealed prior to his indictment, trial and conviction, he is entitled to discharge.

He incorrectly construes *Rust* v. *State* (1853), 4 Ind. 528 to hold that an alleged criminal act must be prohibited and pun-

ishable not only at the time of commission but at the time of prosecution and conviction as well. In actuality *Rust* declares only that a person cannot be punished for the doing of an act which at the time of its commission was not prohibited.

It is true, however, that no person may be convicted for violation of a since repealed criminal statute unless provision therefor is contained in a savings clause. *Taylor* v. *State* (1844), 7 Blackf. 93.

The problem is now, for the most part, academic. The General Assembly of 1877 enacted a sweeping savings provision which has continued in effect and unchanged since that time. IC 1-1-5-1 (Burns Code Ed. 1972).

The provision states:

"Whenever an act is repealed which repealed a former act, such act shall not thereby be revived, unless it shall be so expressly provided. And the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide; and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action of prosecution for the enforcement of such penalty forfeiture or liability."

In *Heath* v. *State* (1910), 173 Ind. 296, 298, 90 N.E. 310, 311, this provision was held to be:

". . . declarative of the continuing policy of the State, that the repeal of any statute shall not have the effect to release or extinguish any penalty or liability incurred under such statute unless the repealing act expressly so provide, would be sufficient to uphold this prosecution."

Furthermore, in *State* v. *Hardman* (1896), 16 Ind. App. 357, 361, 45 N.E. 345, 346, it was stated:

"General saving statutes such as this [The 1877 provision above-quoted] are by law imported into the subsequent repealing acts and obviate the necessity for individual saving clauses."

The above principles enunciated in *Heath* v. *State, supra,* and *State* v. *Hardman, supra,* were reaffirmed in *Burk* v. *State*

(1916), 185 Ind. 47, 113 N.E. 294 and in *Pruitt* v. *State* (1926), 198 Ind. 175, 152 N.E. 817.

We, therefore, do not look to the savings clause of the specific repeal provision of the Controlled Substances Act, except to determine whether there is a clear indication of legislative intent to prohibit prosecution of violations of the repealed Narcotic Act. Section 6 of the Controlled Substances Act reads as follows:

> "The laws specified below are hereby specifically repealed except with respect to rights and duties which matured, penalties which were incurred and proceedings which were begun before the effective date of this act: I.C. 1971, 35-24-1, as amended; [the Narcotic Act] and I.C. 1971, 35-24-4-4(a)." Acts 1973, P.L. 335, sec. 6.

Despite the absence of the word "liability", which is present in the general savings provision of IC 1-1-5-1, *supra,* Section 6, as above-quoted, contains no expression of intent, even by implication, that liability for a past violation of the Narcotic Act, though as yet uncharged, was to be extinguished.

Wardlow, however, sees such expression of intent in Section 1, Chapter 6 of the Controlled Substances Act (IC 35-24.1-6-1) which reads in pertinent part as follows:

> "Pending Proceedings. (a) Prosecution for any violation of law occurring prior to the effective date of this act is not affected or abated by this article. If the offense being prosecuted is similar to one set out in chapter 4 of this article, then the penalties under chapter 4 apply if they are less than those under prior law."

Wardlow's construction of this section gives undue emphasis to the fact that the legislature, placed the "Pending Proceedings", caption thereon, and drawing from that categorization he argues that IC 35-24.1-6-1 clearly indicates a legislative intent to preserve only criminal prosecutions which are pending prior to the effective date of the Controlled Substances Act. This assertion flies in the face of the fact that the legislature placed the adjectival phrase "occurring prior to" in such a manner as to clearly modify the word "violations"—not the

word "Prosecution." Had the General Assembly intended to confine the section as argued by Wardlow, it would have, no doubt, utilized a grammatical construction which placed the modifying phrase in textual proximity to the word "Prosecution." It did not do so. Accordingly, we will not attribute to this provision any intent to preclude prosecution for an act which was a criminal offense when committed. *See Blythe* v. *Gibbons* (1893), 141 Ind. 332, 35 N.E. 557. To do otherwise would achieve manifest injustice if not absurdity. *See Lake Shore and Michigan Southern Ry.* v. *Cincinnati, Wabash and Michigan Ry.* (1888), 116 Ind. 578, 19 N.E. 440. Suffice it to say that Wardlow's crime—sale of cocaine—constituted a punishable public offense at the time committed and without hiatus throughout the period of his indictment, trial and conviction.

## II.

### EVIDENCE WAS SUFFICIENT TO ESTABLISH VENUE OF CRIME

"After testifying about Wardlow's sale of cocaine, Police Officer Charles P. Williams was asked:

"Q. What happened if anything?

A. He got in the vehicle and we proceeded on back to the head shop location on Sixty-seven, and he advised me that if I liked this material that he had a connection for quantity. And I told him I would have to see how this went on the street and then I would get back to him.

Q. These events took place on what date, please?

A. January the twenty-ninth, 1973.

Q. Marion County, Indiana?

A. Yes."

Although the State may have been more precise in establishing that the matters and occurrences testified to and constituting the offense charged transpired in Marion County, the above testimony was sufficient to permit a reasonable conclusion that such was the fact.

We therefore reject Wardlow's contention that venue was not established by sufficient evidence.

## III.

### STATE'S FAILURE TO MAKE OPENING STATEMENT NOT FATAL TO CONVICTION FOLLOWING TRIAL TO COURT WITHOUT JURY

Wardlow contends that the prosecution is obligated to make an opening statement and relies upon the following portion of IC 35-1-35-1 concerning the order of trial proceedings:

> "First, the prosecuting attorney *must* state the case of the prosecution and briefly state the evidence by which he expects to support it . . ." (Emphasis supplied).

Wardlow fails to recite that the preceding provision of the section sets forth the order of proceedings in terms of a "jury being impaneled and sworn."

By its terms, IC 35-1-35-1 does not apply, insofar as a mandatory opening statement by the prosecution, to a bench trial without jury. *Shaw* v. *State* (1976), 171 Ind. App. 221, 355 N.E.2d 879.

We are not unaware of *Blume* v. *State* (1963), 244 Ind. 121, 189 N.E.2d 568, and *Chatman* v. *State* (1975), 164 Ind. App. 97, 326 N.E.2d 839, which attribute to the opening statement a purpose in addition to that which advises the jury as to the nature of the case. That secondary purpose was stated by way of dictum in cases involving trial by jury, to be the informing of the accused to the contemplated course of the prosecution so as to enable him to meet the charge against him.

To the extent that the prosecutorial opening statement was formerly thought necessary to advise the accused of the charges, we think such purpose to be adequately served by the extensive pre-trial discovery presently available. *See. State*

*ex rel. Keller* v. *Marion Criminal Court* (1974), 262 Ind. 420, 317 N.E.2d 433.

Be that as it may, the decision in *Shaw* v. *State, supra,* speaks correctly to the question before us.

The judgment is affirmed.

White, J., concurs.

Staton, P.J. (participating by designation), concurs.

NOTE.—Reported at 360 N.E.2d 851.