Homer and Bertha BOFFO, Stacey and Pearl Cox, Carlton and Leora Hutton, C. Harvey and Mary Jo Bradley, Ira Jennings, Benny and Doris Wilson, and Northview Christian Church, Petitioners-Appellants,

v.

The BOONE COUNTY BOARD OF ZONING APPEALS, Jonathan W. Bankert, Joan Adams, Virgil Moore, and June Cooper, Respondents-Appellees.

No. 1–780A199.

Court of Appeals of Indiana, First District.

June 15, 1981.

Rehearing Denied July 29, 1981.

Charles L. Whistler, Lewis D. Beckwith, John B. Swarbrick, Baker & Daniels, Indianapolis, H. Roy Martin, Martin, Wharry & Pedersen, Lebanon, for petitioners-appellants.

Halbert W. Kunz, William A. Waddick, Kunz & Kunz, Indianapolis, Michael J. Andreoli, Donaldson & Andreoli, Warren D. Krebs, Parr, Richey, Obremskey & Morton, Lebanon, for respondents-appellees.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Homer and Bertha Boffo, together with nine other landowners of Boone County and the Northview Christian Church (hereinafter, Boffos), appeal from a judgment of the Boone Circuit Court affirming a ruling of the Boone County Board of Zoning Appeals (Board) which granted a special exception to Jonathan W. Bankert, permitting him to expand a legally established landfill operation to adjacent properties. We affirm.

## FACTS

On September 28, 1977, the Board voted three to two to grant a special exception [1] for a landfill operation to Bankert, an exception they had denied him on March 30, 1977. The Board stated that sufficient changes of circumstances had occurred since March to permit the reconsideration and subsequent granting of such special exception, though they set forth no specific facts to support either this conclusion or the grant in general in September 1977. This case was appealed to the Boone Circuit Court on a writ of certiorari, and the trial court affirmed the Board's ruling. Upon appeal to this court, the judgment of the trial court was reversed, and the case was remanded to the trial court. A petition to transfer filed with the Indiana Supreme Court was denied on July 5, 1979. The trial court subsequently remanded this cause to the Board for specific findings of fact which the Board then made. Once again in reviewing the Board's action upon a writ of certiorari the trial court approved the grant in a lengthy and detailed entry. Boffos launch the current appeal therefrom.

## ISSUES

The issues presented by Boffos for our review are the following:

1. Was the Board's purported approval of a special exception authorizing the use of certain property as a landfill barred by *res judicata* in light of the Board's previous denial of the same special exception?

2. Could the Board, as a matter of law, approve a special exception authorizing the use of certain property as a landfill even though each of a majority of its members had found that one or more of the conditions necessary under the Boone County zoning ordinance in order to grant an exception had not been met?

3. Was a closed-door "executive session" of the Board exempt from the statutory prohibition of nonpublic meetings in the Indiana Open Door Law as a session to discuss litigation strategy, or did such executive session constitute a violation of the Open Door Law?

4. Did the Board violate Indiana zoning statutes, the Boone County Zoning Ordinance, and the due process clauses of the United States and Indiana constitutions by refusing the appellants an opportunity to argue their case or to present evidence upon remand?

5. Did the lower court err in finding that the remonstrators lack standing in this case because their supplemental verified petition for writ of certiorari failed properly to allege that they are aggrieved?

## DISCUSSION

*Issue I*

Boffos argue that the Board's approval of a special exception authorizing the use of certain property as a sanitary landfill was barred by *res judicata* in light of the Board's previous denial of the same special exception. The Board and Bankert contend that sufficient changes had been shown to overcome any defense in the nature of *res judicata.*

Boffos correctly note that Bankert's first petition for a special exception permit to use the subject property for purposes of a landfill operation was rejected on March 30, 1977, by the Board. At that time the Board made no specific findings of fact to support its decision. When the Board reconsidered Bankert's petition on September 28, 1977, however, the Board found, in response to Boffos' raising the *res judicata* issue, that there had been a change in circumstances. Thus, the Board reheard Bankert's petition and voted to grant the special exception permit. After remand from this court the Board found the following specific facts:

"Now in support of the above finding the Boone County Board of Zoning Appeals further finds more particularly with

---

1. A "special exception" is defined by Section 1.4 of the applicable "Zoning Ordinance of Boone County, Indiana" as "[t]he authorization of a use, designated as being permitted in the district concerned if it meets special conditions, and upon application, is specifically authorized by the Board." (Record at 671.)

respect to the issue of change of circumstance, that the Petitioner since March 30, 1977, has erected a large earthen mound along the northern perimeter of his real estate to block the view of the sanitary landfill operation from the church as well as other residents along Taylor Avenue; that Petitioner has graded the western slope of the completed landfill, constructed a collecting pond and has built and placed in use portable backstop type fences and snow fences to prevent blowing of paper."

Record at 721.

Boffos state first that the evidence does not support the findings because a collecting pond already existed and the fences to prevent the blowing of paper away from the landfill site were planned and promised by Bankert at the time of the March hearing. Additionally, Boffos contend that neither the large earthen mound nor the grading of the western slope of the property currently used as a landfill site is a material change with respect to the thirty-two acres for which the exception is sought. Boffos argue that "these changes do little more than provide some small hope that Bankert's already existing landfill operation will be less substandard in the future." Appellant's Brief at 43. Second, Boffos assert that the Board was precluded from making such findings of changed circumstances under this court's ruling in *Easley v. Metropolitan Board of Zoning Appeals of Marion Co.*, (1974) 161 Ind.App. 501, 317 N.E.2d 185, *trans. denied* (1975), because the Board failed to find specific facts to support its March 30, 1977, denial. Boffos contend that according to *Easley*, their only obligation was to raise the defense in the nature of *res judicata*[2] and that then it was up to Bankert to prove, and the Board to find, a change in conditions or circumstances upon which the Board had premised its earlier denial. Absent specific findings made upon the denial of the special excep-

tion, Boffos argue, this court has nothing to review in order to ascertain that the Board's determination of changed circumstances was supported by the evidence. Based on language in *Easley*, Boffos contend that Bankert was responsible for the Board's failure to make such findings in March and therefore should have to suffer the consequences of having his petition dismissed upon the raising of the defense of *res judicata*.

We agree with Boffos that *Easley* stands for the proposition that a board of zoning appeals must make specific findings when it denies a petition for a variance. Nevertheless, we note that *Easley* was a case dealing with the denial and subsequent granting of a variance while this case involves the denial and granting of a special exception. There are significant substantive, if not procedural, distinctions between a variance and a special exception. In the context of most zoning ordinances, and specifically in the Boone County Zoning Ordinance under consideration here, a variance involves a deviation or change from the legislated zoning classification applicable to a certain piece of property; a special exception, on the other hand, involves a use which is permitted in the given zoning classification once certain statutory criteria have been found by the Board to exist. Unlike the granting of a variance which has been described as discretionary with the Board upon the finding of the statutory criteria, the granting of the special exception has been described as mandatory upon the finding of compliance with the statutory criteria set forth in the ordinance. *See, e. g.,* 3 A. H. Rathkopf, The Law of Zoning and Planning, § 41.10 (1980); 3 E. C. Yokley, Zoning Law and Practice, § 20–4 (1979); 8A E. McQuillin, The Law of Municipal Corporations § 25.160 (1976); 82 Am.Jur.2d *Zoning and Planning* § 283 (1976). In the words of Rathkopf, a variance and exception can be distinguished as follows:

2. For excellent cases explaining and applying the defense in the nature of *res adjudicata* to determinations of zoning boards and other administrative agencies *see, Easley v. Metropolitan Board of Zoning Appeals of Marion Co.,* *supra*; *Bridge v. Board of Zoning Appeals of Fort Wayne,* (1979) Ind.App., 387 N.E.2d 99; *South Bend Federation of Teachers v. National Education Association–South Bend,* (1979) Ind. App., 389 N.E.2d 23, *trans. denied.*

"This distinction between a use variance, which depends upon a finding of the existence of unnecessary hardships in the application of the ordinance to a particular piece of property by reason of conditions unique to that property, and an exception, which requires no such finding, but only a finding that the conditions stated in the ordinance have been met, further emphasizes the nature of a special exception or conditional use. The inclusion of the particular use in the ordinance as one which is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in the district, and, while a variance can be granted only with respect to a particular property as to which unnecessary hardship is found, the special exception permit must be granted to any and all property which meets the conditions specified." (Footnotes omitted.)

3 Rathkopf, *supra*, at 41–19, 20. Thus, it has been said that "[s]tandards or criteria for the issuance of special permits [or exceptions] are usually less stringent than in the case of variances," 82 Am.Jur.2d, *supra*, at 832, and "[s]ince the exception bears legislative sanction . . . the burden of the applicant is much lighter than it would be if he sought a use variance." 3 Yokley, *supra*, § 20–1 at 219–20. *See also*, 3 Rathkopf, *supra*, at 41–65.

■ Some courts and commentators have attempted to distinguish further the two concepts procedurally by looking at the granting or denial of a variance as an exercise of the *legislative* function of the Board and by characterizing the special exception procedure where a permit is involved as an appeal from an administrative order as an exercise of the *judicial* function of the board. *See*, 1 J. Metzenbaum, Law of Zoning, Ch. IX–f–2(b) (1955) and cases cited therein. Other authorities, however, play down such distinctions, stressing the fact that special exceptions, as well as variances, are matters over which the boards have original jurisdiction. 3 Rathkopf, *supra*, at 41–22; 8A McQuillin, *supra*, § 25.259; 82 Am.Jur.2d, *supra*, § 283 at 829. In the instant case and under the ordinance involved here[3] we tend to agree with those

---

3. The Boone County Zoning Ordinance contains the following section detailing the special exception procedures applicable in this case: "*SECTION 4.8 SPECIAL EXCEPTION PROCEDURES*

A. The Special Exceptions listed in the District (see Table 1, Section 3.0), and their accessory buildings and uses may be permitted by the Board in the Districts indicated therein, in accordance with the procedures set forth in this Section. Uses listed as Special Exceptions in the FP or FQ Districts must be approved by the Indiana Natural Resources Commission prior to approval of the Special Exception by the Board.

B. Upon receipt of an application for an Improvement Location Permit for a Special Exception, the Director may refer the application to the Commission for investigation as to the manner in which the proposed location and character of the Special Exception will affect the Master Land Use Plan. The Commission shall report the results of its study to the Board within 90 days following receipt of the application. If no such report is filed with the Board within the time period, or, if no report is requested by the Director, then the Board shall proceed to process the application.

The Board shall then proceed with a hearing on the application in the manner prescribed in Chapter 7 [?] of this Ordinance. Following the hearing, and upon an affirmative finding by the Board that:

1. The establishment, maintenance, or operation of the Special Exception will not be detrimental to or endanger the public health, safety, morals, or general welfare; and

2. The Special Exception will not be injurious to the use and enjoyment of other properties in the immediate vicinity for the purposes already permitted[;]

3. The establishment of the Special Exception will not impede or substantially alter the normal and orderly development and improvement of surrounding property for uses permitted in the District; and

4. Adequate utilities, access roads, drainage, and other necessary facilities have been or are being provided; and

5. Adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion on the public roads; and

6. The Special Exception will be located in a district where such use is permitted and all other requirements set forth in the Boone County Zoning Ordinance which are applicable to such Special Exception will be met. The Board shall order the Building Commissioner to issue an Improvement Location Permit for the Special Exception.

authorities who find little to distinguish *procedurally* in the approach the board must take in dealing with a request for either a variance or a special exception: "In the matter of granting exceptions it must be remembered that there must be statutory authorization and that the same care should be exercised by the board as when granting a variance." 3 Yokley, Zoning Law and Practice, *supra*, § 20–1 at 212. In other words, the burden of showing that the proposed use will conform to the specific criteria, here spelled out in the ordinance, is upon the petitioners, and whether the board grants or denies the petition for a special exception permit, it must make specific findings under the statutory criteria to support its determination.

 Likewise, the same standard of review is applied by a court when confronted by a petition appealing the determination of a board of zoning appeals with regard to both variances and special exceptions:

"On review, the decision of the Board will not be reversed unless there is a clear showing of abuse of discretion, or a lack of substantial evidence to support the Board's decision or an error of law in such decision. *Carlton et al. v. Bd. of Zoning Appeals* (1969), 252 Ind. 56, 65, 245 N.E.2d 337, and cases cited therein."

*Stanley v. Board of Zoning Appeals, Jasper County,* (1972) 152 Ind.App. 418, 283 N.E.2d 809 at 811. That such a result is logical and reasonable flows from the fact that in either case the appeal is from a final determination of an administrative agency. There is a presumption that determinations of a zoning board, as an administrative agency with expertise in the area of zoning problems, are correct and should not be overturned unless they are arbitrary, capricious, or patently unreasonable so as to constitute an abuse of discretion. *Value Oil Co. v. Town of Irvington,* (1978) 152 N.J.Super. 354, 377 A.2d 1225 (L.Div.1977); *aff'd* 164

N.J.Super. 419, 396 A.2d 1149 (1978). Thus, a reviewing court does not conduct a trial *de novo* and may not substitute its decision for that of the Board. *Metropolitan Board of Zoning Appeals v. Standard Life Insurance Co.,* (1969) 145 Ind.App. 363, 251 N.E.2d 60 *trans. denied* (1970); *Devon Civic League v. Marion Co. Board of Zoning Appeals,* (1967) 140 Ind.App. 519, 224 N.E.2d 66, *trans. denied.* Likewise, courts may not make findings for the agency by inference based on evidence in the record. It is the agency's duty to make the findings; courts may only review, not make by inference, such findings. Whether such findings are supported by evidence in the record, however, is a matter courts may determine. If the findings are not supported by evidence the board will be said to have abused its discretion in granting the relief requested.

 With regard to sufficiency of the evidence questions on review, courts have set out two separate standards for determining abuse of discretion depending upon whether a variance has been either granted or denied. *See, Metropolitan Board of Zoning Appeals v. Standard Life Insurance Co., supra.* In order to upset the board's determination when it has *denied* a variance, the reviewing court, after resolving all doubts respecting the evidence in favor of the board's decision, must find that each of the statutory prerequisites has been established as a matter of law. *Id.* "In other words, the evidence *supporting* each prerequisite must be such that no reasonable man could fail to accept that prerequisite as proved." *Id.,* 251 N.E.2d at 61. Such a standard makes it extremely difficult for a trial court to overturn a negative decision in the absence of procedural irregularities. On the other hand, "[i]n order to reverse an order of a board which *grants* a variance, an appellant must show that the quantum of legitimate evidence was so proportionately meager as to lead to the conviction

C. An existing use which is listed herein as a Special Exception, and which is located in a District in which such Special Exception may be permitted, is a conforming use. Any expansion of the Special Exception involving the enlargement of the buildings, structures,

or land area devoted to such use shall be subject to the procedures described in this Section.

D. The filing fee for a Special Exception shall be as shown in Table 2 which is hereby established and made a part of this Section."

that the finding and decision of the Board does not rest upon a rational basis," *i. e.,* "that at least one of the five statutory prerequisites is not supported by substantial evidence of probative value." *Braughton v. Metropolitan Board of Zoning Appeals,* (1970) 146 Ind.App. 652, 257 N.E.2d 839, 258 N.E.2d 866, *trans. denied,* overruled on issue of *res judicata* in *Easley v. Metropolitan Board of Zoning Appeals of Marion Co., supra.* Boffos' allegations of error here encompass both questions as to the sufficiency of the evidence, as well as questions of procedural error as a matter of law.

In their first issue Boffos allege that the Board erred in not dismissing Bankert's petition on grounds of *res judicata.* Boffos argue that the Board erred as a matter of law not only because it failed to make findings to support its negative decision in March as required by *Easley,* but also because the Board's specific findings made upon remand to support their finding of the ultimate fact of changed circumstances were not supported by substantial evidence of probative value since the changes were not material changes again as defined by *Easley.*

■ Because we have determined as a practical matter that the methods this court must use to review the action of a board with respect to the granting or denial of both the variance and the special exception are virtually identical, we agree with the Boffos that the rules enunciated in *Easley* with respect to *res judicata* should have applied in this case and that the Board should have made findings in support of its March denial. Nevertheless, perhaps because *Easley* was specifically a variance case and because Indiana law was silent as to whether the same procedural requisites would be applicable to special exceptions as to variances, this court by its memorandum opinion of Judge Lowdermilk, filed February 14, 1979, Ind.App. No. 1–678–A–182, adopted the interim measure suggested in *Easley* and remanded this cause for specific findings. Record at 525–527. The duty of the Board upon remand was, as set out in *Easley,*

"to determine, as a question of *fact,* upon all the evidence before it, whether such conditions or circumstances have or have not changed and whether such changes as proved by petitioner, if any, are sufficient to render the variance petition then being considered *materially* different than that which was previously denied. The focus of the Board's determination is necessarily placed upon comparison of the variance petition which was denied with the petition being immediately considered. For reasons hereinbefore set forth, the focus cannot be placed on the facts or conclusions which prompted the prior denial. Those facts and conclusions are locked subjectively in the minds of the members of the Board which denied the prior petition. In requiring that the Board determine that the petition under consideration be *materially* different from that which was denied we, as nearly as feasible during the interim period, impose a requirement which dictates a consideration of the conditions and circumstances which existed at the time of the prior denial. It approximates as closely as we have been able to devise, the standard which we have established for the future, i. e., that a variance be granted only if there has been a change in the circumstance, condition or fact which induced the prior denial. We reiterate, however, that from and after November 1, 1974, the Board must enter specific findings or a statement of reasons when denying a variance."

*Id.,* 317 N.E.2d at 193. The Board in our case fulfilled its duty to make those special findings as set out above, and thus Boffos's arguments with regard to the special finding aspect of the issue must fail.

■ We reach the same conclusion with respect to Boffos' argument that the changes upon which the Board premised its determination to rehear Bankert's request were not sufficient to render the special exception petition materially different from that which had been previously denied. The major thrust of Boffos' argument here is that the changes had been promised by

Bankert at the March hearing, or that they were a normal part of his sanitary landfill operation, and in either case that they did not involve the thirty-two acres for which he sought the special exception permit. We remind Boffos that "it is not *any* changed circumstance or condition which will authorize subsequent reconsideration. It must be a change in the particular circumstance or condition which induced the prior denial." *Id.*, 317 N.E.2d at 192. Thus, although the changes may not appear to involve the property for which the special exception was sought, they are material in that they represent changes in those circumstances and conditions which induced the prior denial. *See, Rocchi v. Zoning Board of Appeals of Glastonbury,* (1968) 157 Conn. 106, 248 A.2d 922. Even though Bankert may have promised the fence, the mound, and grading—improvements to his legally established nonconforming use which would materially affect any expansion of the use—at the March meeting, these changed conditions did not exist in fact at that time, and the Board was correct in not granting such special use permit where it found that expansion of the landfill operation as it currently existed would not meet all of the six statutory criteria set out in the ordinance. *See,* Record at 178–182, 232. Again it is important to emphasize those substantive distinctions between a variance and a special exception, noting especially the fact that because a special exception is a use provided for by ordinance within a certain zoning classification, once the specified statutory criteria have been satisfied, the Board may not deny the special exception. *See,* 82 Am.Jur.2d, *supra,* § 283; *Value Oil Co. v. Town of Irvington, supra; Pennypack Manor Nursing Home, Inc. v. Petrella,* (1978) 35 Pa.Cmwlth. 367, 387 A.2d 139.

We therefore find that the trial court's special findings of fact numbered 7, 8, 9, and 10 stating that the Board made special findings to support its conclusion that there was a material change in circumstances which permitted their rehearing of Bankert's petition and that such findings were supported by sufficient evidence were not contrary either to the law or the facts.

## Issue II

Boffos challenge as contrary to law that portion of the court's finding number 8 which reads: "The Boone County Board of Zoning Appeals by a majority vote of its members duly found each of the six required affirmative findings set forth in Section 4.8(B) of the Boone County Comprehensive Zoning Ordinance existed[;]" and conclusion of law number 4 which reads: "Only an affirmative vote of the majority of the members of the Boone County Board of Zoning Appeals in favor of approving the special exception to Jonathan W. Bankert is necessary to constitute a decision approving this special exception." Boffos correctly point out that, as is true in the case of a variance, a special exception may not be granted unless the Board finds that all of the requirements specified by the ordinance have been satisfied. *See, Metropolitan Development Commission of Marion Co. v. Camplin,* (1972) 153 Ind.App. 622, 288 N.E.2d 569; *Rocchi v. Zoning Board of Appeals of Glastonbury, supra;* 3 Yokley, Zoning Law and Practice, *supra,* at 219–20. Boffos then argue that each of the board members must find affirmatively on each of the six specific requirements before that member may vote affirmatively to grant the special exception. The Board and Bankert, on the other hand, contend that the only vote which a reviewing court considers is the vote upon the ultimate question of whether to grant or deny the special exception and that it is this determination which the Board must support with sufficient findings to show that the statutory criteria have been met. We agree with the Board and Bankert.

In *Carlton v. Board of Zoning Appeals,* (1969) 252 Ind. 56, 245 N.E.2d 337, our supreme court was confronted with a case in which the Board had granted a variance and the trial court had affirmed, entering special findings. In special finding number 12 the court stated:

" 'The defendant board of zoning appeals of the City of Indianapolis, by and

through its members voting in favor of the petition for variance, consisting of a majority of the said board, *did make a determination in writing that the grant of a variance did not interfere with the metropolitan comprehensive plan* since no zoning ordinance or ordinances classifying or restricting the use of or otherwise applicable to the property involved shall be considered to be a part of such metropolitan comprehensive plan.' (Emphasis added.)"

245 N.E.2d 339. In support of the court's finding that a majority of the Board complied with the statutory requirement to make written findings supporting all five of the statutory criteria, the appellees submitted three forms containing the affirmative votes of three of the five individual board members. On one member's sheet there was a "yes" vote on each of the criteria except the fifth which was blank; appellees argued that from the fact of the member's signature at the bottom of the form the court could infer an affirmative vote. Justice DeBruler, in writing for the court, disagreed:

"We cannot infer how Mr. Owens voted on No. 5 in the absence of some indication of that vote. Mr. Owens' vote on No. 5 was critical since without him there were only two of the five Board members voting 'yes' on No. 5 and the absence of an indication of his vote cannot be a mere 'irregularity.' Appellees contend that Mr. Owens' signature on the bottom of one form indicates he voted 'yes' on all five determinations. We do not think that from the signature alone it can be inferred how the signor intended to vote on No. 5. The signature could have been intended merely to identify the author of the vote on determinations one through four. From the record we cannot say what significance these forms had for the individual members nor for the entire

Board because we are not advised of the internal operating procedure of the Board. That is why we rely on the finding of the entire Board set out in the minutes of the Board rather than these forms which have a significance unknown to us."

245 N.E.2d 342.

In our case, on the contrary, we are apprised by the record of the significance of the individual votes as a part of the internal operating procedure of the Board. The procedure adopted by the Boone County Zoning Board requires a majority vote of the Board on each of the six criteria before the vote on the ultimate question is taken. Then once again, the Board requires a majority vote on the ultimate question of whether or not the special exception should be granted. Appellants present us with a tally of each of the members' votes on each of the individual requirements for the special exception as well as on the ultimate question of whether or not the special exception should be granted. The vote on the ultimate question was three "yes" votes and two "no" votes. Clearly, a majority of the membership of the board voted to grant the special exception, which is all that the ordinance requires.[4]

Boffos argue, however, that a majority of the membership of the Board did not in fact approve the grant because one of the member's votes was defective. Boffos state that member Smith who indeed voted affirmatively to grant the special exception could not so hold because she had not found requirement number 6 of the ordinance (*see* footnote two, *supra*) to have been met. The Board and Bankert, on the other hand, argue that it is only the overall Board vote upon the ultimate question to grant the exception which must be supported by affirmative determinations on those requirements set forth in the ordinance. They point to the very words of Section 4.8(B) of

---

4. Section 9.1(F) of the Boone County Zoning Ordinance provides:

"No action of the board is official unless concurred in by a majority of the membership of the board."

(Record at 714.)

This section is virtually identical to the rule now codified in the current Area Planning Act, IC 1971 18–7–4–911 (Burns Code Ed., Supp. 1980): "Action of the board of zoning appeals is not official unless it is authorized by a majority of the entire membership of the board."

the Boone County Zoning Ordinance which state that it is the *Board* which must find affirmatively each of the six criteria set out therein. *See* footnote two, *supra.*

 We agree with Boffos that it would appear to be logical and reasonable where balloting, as in *Carlton*, is the method employed by the Board to require each member of the Board to find affirmatively each of the statutory requirements before he or she could vote affirmatively on the ultimate question. Unfortunately, Boffos cite us to no authority, and we have found none, which directly supports their position. Their analogy between the Board's method of voting and special verdicts of a jury is unconvincing. In fact all of the authority we have found seems to favor the Board's position here. Both the statute pursuant to which the zoning ordinance in question was enacted and the zoning ordinance itself provide first that actions by a board of zoning appeals will be legitimate when concurred in by a majority of the members and second that it is the Board (*i. e.*, a majority thereof) which must make the determinations required by the ordinance. We note also that hearings before zoning boards are rather informal in nature compared with the strict rules of judicial proceedings. *Fail v. LaPorte Co. Board of Zoning Appeals,* (1976) 171 Ind.App. 192, 355 N.E.2d 455, *trans. denied* (1977); 3 Yokley, Zoning Law and Practice, *supra,* § 18–9. Because a zoning board is a body usually composed of persons without legal training, courts are reluctant to impose rigid technical requirements upon their procedures so long as they are orderly, impartial, judicious, and fundamentally fair. 82 Am.Jur.2d, *supra,* § 296. Here the Board has been invested with the authority to "prescribe such regulations as it considers necessary to carry out" the ordinance, Section 9.1(C) of the Boone County Zoning Ordinance, Record at 714, and in so doing followed the ordinance literally, taking a Board vote on each of the specific requirements before taking a vote on the ultimate question. Where a statute is silent or specifies only a majority vote on the ultimate issue, courts are reluctant to impose stricter requirements on the Board.

*See,* 82 Am.Jur.2d, *supra,* § 312. It has been held in at least one variance case that where the ordinance provides, as does Subsection E of Section 9.1 of the Boone County Zoning Ordinance,

"that the board 'shall keep minutes of its proceedings, showing the vote of each member on every question[,] . . .' [t]his manifestly applies only to the ultimate question whether or not the permission sought should be granted."

*Torello v. Board of Zoning Appeals of New Haven,* (1940) 127 Conn. 307, 16 A.2d 591. *See also,* 82 Am.Jur.2d, *supra,* § 316; 101 C.J.S. *Zoning* § 309 (1958). Although we are reluctant to rely on this language as controlling because not all the facts and procedures of the Board involved in *Torello* are set out by the court, when read in conjunction with *Carlton* in which the court looked only to the conclusion as a whole we must conclude that unless the procedures used upon which the ultimate conclusion is based are somehow not orderly, impartial, judicious, or fundamentally fair, they will not be held to be contrary to law. Although neither Judge Lowdermilk in his memorandum opinion nor the supreme court in denying transfer of this cause made reference to the voting issue here involved, implicit in the decision to remand for specific findings upon the record before the court is the conclusion that such procedures used were fundamentally fair, hence not contrary to law. We find nothing in the record to suggest otherwise and conclude therefore that the voting procedures used by the Board in this case were orderly, impartial, judicious, and fundamentally fair. In other words, so long as a majority of the Board members vote affirmatively on each of the six statutory criteria, a majority of the Board may vote to grant the special exception. The trial court, therefore, did not err in finding number 8 and conclusion number 4.

*Issue III*

Boffos contend that the Board violated Indiana's Open Door Law, Ind. Code 5–14–1.5–1 *et seq.,* when it held a closed session

prior to their adoption of specific findings of fact on November 7, 1979. IC 1976, 5–14–1.5–3 (Burns Code Ed., Supp. 1980) states:

"Meetings of governing bodies of public agencies to be open—Secret ballot vote.—(a) Except as provided in section 6 [5–14–1.5–6] herein, all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them.

(b) A secret ballot vote may not be taken at a meeting [IC 5–14–1.5–3, as added by Acts 1977, P.L. 57, § 1, p. 343.]"

None of the parties argues that the Board of Zoning Appeals may take official action in meetings not open to the public or that this law does not apply to the Board. The fact that Board action is to be taken in public meetings was determined long before the current "Sunshine Laws" were enacted. *See, e. g., Keeling v. Board of Zoning Appeals of Indianapolis,* (1946) 117 Ind.App. 314, 69 N.E.2d 613, *trans. denied* (1947).

 The Board argues here, however, that the part of the meeting from which the public was excluded was an executive session concerned only with litigation strategy and that such session was excepted by section 6. Indiana Code 5–14–1.5–6(a) specifies that executive sessions may be held for discussion of strategy with respect to pending litigation.[6] The trial court, having heard evidence on this question, made the following finding:

"The Boone County Board of Zoning Appeals properly met in executive session for discussion of strategy with respect to litigation which was pending and said Board adopted its Findings of Fact in public session after having received purposed findings of fact submitted by both the attorneys for Petitioners and Respondents."

Record at 878. Although as a general rule courts will not conduct a trial *de novo* when reviewing the decision of a board of zoning appeals, 82 Am.Jur.2d, *supra,* § 356, a court may hear evidence to determine whether the board acted legally. *Board of Zoning Appeals v. Waintrup,* (1935) 99 Ind.App. 576, 193 N.E. 701. It is presumed that proceedings before a board of zoning appeals are regular and in observance of all legal requirements. 8A E. McQuillin, The Law of Municipal Corporations § 25.254(a) (1976). The burden was on the Boffos, therefore, to show that the Board in this case was not acting in executive session as provided by IC 5–14–1.5–6. The court found that the Boffos did not carry their burden. On review, we shall not judge the credibility of the witnesses or reweigh their testimony. That is the function of the trial

**6.** IC 1976, 5–14–1.5–6 reads *in toto* as follows:

"Executive sessions.—(a) Executive sessions may be held only in the following instances: (i) where authorized by federal or state statute; (ii) for discussion of strategy with respect to: collective bargaining, initiation of litigation or litigation which is either pending or has been threatened specifically in writing, the implementation of security systems, or the purchase or lease of real property up to the time a contract or option to purchase or lease is executed by the parties; however, all such strategy discussions must be necessary for competitive or bargaining reasons; (iii) interviews with industrial or commercial prospects or their agents; (iv) interviews with prospective employees; (v) with respect to any individual over whom the governing body has jurisdiction: to receive information concerning the individual's alleged misconduct, and to discuss, prior to any determination, that individual's status as an employee, student, or independent con-

tractor; (vi) for discussion of records classified as confidential by state or federal statute; (vii) to discuss before any placement decision an individual student's abilities, past performance, behavior, and needs; and (viii) to discuss a job performance evaluation of individual employees.

(b) A final action must be taken at a meeting open to the public.

(c) Public notice of executive sessions must state their purpose or subject matter. The requirements stated in section 4[5–14–1.-5–4] of this chapter for memoranda and minutes being made available to the public is modified as to executive sessions in that they need identify only the subject considered.

(d) A governing body may not conduct an executive session during a meeting, except as otherwise permitted by applicable statute. A meeting may not be recessed and reconvened with the intent of circumventing this subsection. [IC 5–14–1.5–6, as added by Acts 1977, P.L. 57, § 1; 1979, P.L. 39, § 3.]"

court. *Brand v. Monumental Life Ins. Co.,* (1980) Ind., 417 N.E.2d 297. This court presumes that the trial court correctly decided the questions before it. *Kuykendall v. County Commissioners of Marion Co.,* (1968) 142 Ind.App. 363, 234 N.E.2d 860, *trans. denied.* In reviewing a case in which the trial court has rendered findings of fact pursuant to Ind.Rules of Procedure, Trial Rule 52, this court will not set aside the judgment unless it is clearly erroneous. *Bird v. Delaware Muncie Metropolitan Plan Commission,* (1981) Ind.App., 416 N.E.2d 482. Furthermore, we consider only the evidence most favorable to the trial court's decision and will set it aside only where the evidence leads to but one conclusion and the court has reached another. *Glasgo v. Glasgo,* (1980) Ind.App., 410 N.E.2d 1325, *trans. denied.* Although conflicting inferences may arise from the testimony given by the members of the Board who appeared before the court to explain what was discussed in the closed door session of the Board prior to the adopting of the specific findings by the Board at an open meeting, we find sufficient evidence to support the court's finding that such meeting did not violate IC 5–14–1.5–1 *et seq.*

*Issue IV*

■ Boffos assert that they were denied due process of law because, upon remand of the case by the trial court to the Board for specific findings, they were denied the opportunity to argue their case further or to present additional evidence. Indiana law on this issue is clear and straight forward.

In *Metropolitan Board of Zoning Appeals, Division III v. Graves,* (1977) 172 Ind.App. 459, 360 N.E.2d 848, this court held that the trial court had correctly remanded a case to the Board when no factual findings had been made to support the denial of the variance, but that the trial court erred in requiring further hearings. Judge White wrote for the court at 360 N.E.2d 851: "The failure of the Board to make findings of fact based on evidence presented at the time is a procedural defect that can and should be remedied by the Board without additional hearings." *See also,* 82 Am. Jur.2d, *supra,* § 360.

The trial court did not err in finding that Boffos were not denied due process of law.

*Issue V*

■ Boffos contend that the trial court erred in concluding [7] that they lacked standing to raise issues not included in their Verified Supplemental Petition for Writ of Certiorari filed on October 27, 1977, because they failed to allege that they were aggrieved parties as required by Ind.Code 18–7–4–1003.[8] Boffos had incorporated by reference paragraphs one through fourteen of their first petition for writ of certiorari into their second petition for writ of certiorari filed on November 26, 1979. They contend that Ind.Rules of Procedure, Trial Rule 10(c) clearly encourages such procedures and updates the incorporated matters to the date of the new pleading. Bankert and the Board argue that only those grievances raised as of October 27, 1977, are incorpo-

---

7. The court's finding number 17 reads:

 "The petitioners have failed to allege in their Verified Supplemental Petition for Writ of Certiorari filed November 26, 1979 that they are aggrieved persons. Petitioners only allege they were aggrieved on October 27, 1977 by incorporating by reference Paragraphs 1 through 14 of the Verified Petition for Writ of Certiorari filed October 27, 1977[;]" (Record at 879.)

 and conclusion of law number 3 states:

 "Having failed to allege in their Verified Supplemental Petition for Writ of Certiorari filed November 26, 1979, that they are presently aggrieved by the decision of the Boone County Board of Zoning Appeals, the petitioners have failed to comply with the juris-

dictional requirements of IC 18–7–4–1003, are not aggrieved persons and have no standing to sue as to any new grounds of illegality not set out in the Verified Petition for Writ of Certiorari filed October 27, 1977." (Record at 879.)

8. The statutory section cited here is a later enactment of Ind.Code 18–7–4–83. Acts 1979, P.L. 178 (IC 18–7–4–101–1213) became effective as of April 6, 1979, repealing IC 18–7–4–1–99. Nevertheless section 165 of P.L. 178 provides that the new law was intended merely to recodify the repealed law and section 165(b) states: "The act does not affect any ... proceedings begun ... before the effective date of this act."

rated into the November petition and that Boffos may not raise now those issues of illegality alleged to have occurred _after that date, *viz.*, the failure to receive additional testimony and evidence upon remand and any violations of the Open Door Statute.

We find that we need not decide this issue because in spite of its conclusion that Boffos lacked standing to raise such issues, the court in effect afforded Boffos standing by addressing those very issues on the merits. Indiana Rules of Procedure, Trial Rule 61 provides:

> "No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order in anything done or omitted by the court or by any of the parties is ground for granting relief under a motion to correct errors or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order or for reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Therefore, assuming *arguendo* that the trial court erred in its conclusion, the error did not harm or prejudice the substantial rights of Boffos to have the issues they raised in their subsequent petition heard and determined on the merits. We must hold as harmless any error the court may have committed in concluding that the Boffos lacked standing to raise allegations of error involving the Board's proceedings upon remand. We strike as superfluous finding number 17 and conclusion number 3 and uphold the rest of the judgment.

Judgment as modified affirmed.

BUCHANAN, C. J. (by designation), and ROBERTSON, J., concur.